## MADDOX et al. v. HUNT et al.

### No. 28878.  Oct. 7, 1938.

Cicero I. Murray and Malcolm E. Rosser, for plaintiffs.

Mac Q. Williamson, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for defendants.

HURST, J.  This is an original action for writ of mandamus to compel the State Election Board to place the name of Hon. Wm. H. Murray on the ballot for the general election to be held on November 8, 1938, as a nonpartisan candidate for the office of United States Senator.

The petition for writ of mandamus was filed by K. L. Maddox, for himself and 36,874 other legal voters, and alleged in substance that on September 19, 1938, a petition was filed with the State Election Board by said legal voters requesting the board to place the name of Mr. Murray on the ballot; that under section 5, art. 3, of the Constitution and by virtue of sections 5754 and 5714, O. S. 1931, the people, or a reasonable number of them, have the right to petition the board and require it to place on the official ballot the name of any candidate they see fit as a nonpartisan, provided such petition is filed in time to have the name printed thereon; that on September 22, 1938, a hearing was had before the board, and on September 24, 1938, the board made an order denying the application;

as a result of which this action was filed on September 27, 1938.

The defendants in their answer and return of alternative writ set out several defenses to the petition, but under the view we take of the matter, we think it necessary to discuss only the contention that the board had no authority to place the name of Mr. Murray on the ballot for the reason that the petition was not filed within the time required by statute, as our decision on that question is decisive of the case.

Chapter 62, S. L. 1933, sec. 1, prescribes the form of the notification and declaration required to be filed by party candidates and provides:

"* * * This act, except as to declaration of party affiliation, shall apply to independent and nonpartisan candidates. The petition of a nonpartisan candidate, or of the people to place a nonpartisan candidate's name upon the ballots, shall be filed with the secretary of the proper election board within the time prescribed by law for the filing of petitions of notification and declaration of candidacy."

Section 2 provides that the notification and declaration to be filed with the secretary of the State Election Board shall be filed not more than 100 days nor less than 65 days before the day fixed by law for the primary election, and then states:

"The name of a nonpartisan candidate shall not be printed upon the official ballot for the general election unless a notification and declaration in conformity with the provisions of this section shall have been filed by such candidate with the proper election board within the time prescribed by this section for the filing of notification and declaration."

Section 2 was amended by chapter 29, art. 2. S. L. 1937, p. 135, so as to change the filing date and eliminate the reference to the run-off primary election, but the provision above quoted remained intact. It will be noted that section 1 of the statute requires the "petition" of the nonpartisan candidate, or of the people, to be filed before the close of the filing date, and section 2 requires the nonpartisan candidate himself to file a "notification and declaration" before the expiration of said date. Here the filing date expired on May 7, 1938. The petition was not filed until September 19, 1938, and Mr. Murray himself filed no notification and declaration as a nonpartisan. Thus it appears from the plain terms of the statute that the board had no authority to place his name on the ballot.

But petitioner's contention is that the statute referred to is unconstitutional in that it is a limitation on the right reserved to the people by section 5, art. 3, of the Constitution to place the name of a nonpartisan candidate on the official ballot. Section 5 provides:

"The Legislature shall enact laws providing for a mandatory primary system, which shall provide for the nomination of all candidates in all elections for state, district, county, and municipal officers, for all political parties, including United States Senators; Provided, however, this provision shall not exclude the right of the people to place on the ballot by petition any nonpartisan candidate."

We think a reading of the constitutional provision discloses that it is neither a grant of power nor a reservation of power in the people, but is simply a limitation on the power of the Legislature. In the operation of the state government, as distinguished from the federal government, the Legislature has plenary power except as expressly limited by the Constitution. 11 Am. Jur. 619, sec. 18; 12 C. J. 805, sec. 237; Wentz v. Thomas (1932) 159 Okla. 124, 15 P.2d 65. This section provides that in enacting laws for a mandatory primary system, the power of the Legislature is limited to the extent that it "shall not exclude the right of the people to place on the ballot by petition any nonpartisan candidate." Clearly the legislative act in question does not "exclude" such right. It merely imposes upon it the same limitations as are imposed upon partisan candidates, and it does not abridge the constitutional limitation upon the power of the Legislature.

But viewing the case in the light most favorable to petitioners and assuming that the constitutional provision constitutes a reservation of power in the people, nevertheless the legislative act in question is not unconstitutional, for the reason that it is not self-executing and the Legislature must enact laws for the purpose of carrying out the declaration of rights therein announced. It is not within our province to pass upon the wisdom of such legislation. The question of whether a constitutional provision is or is not self-executing is one of intention. 11 Am. Jur. 668, sec. 71; 12 C. J. 729, sec. 106. Where the Constitution contains a provision that the Legislature should make suitable provisions for carrying into effect its provisions, it obviously is not self-executing, inasmuch as it is directed to the Legislature and is indicative of

the intention that such provision should not become effective until made so by an act of the Legislature. 11 Am. Jur. 690, sec. 73; 12 C. J. 730, sec. 107. Such is the case with the first part of this section referring to the mandatory primary election, and accordingly it has been properly held to be not self-executing. Dancy v. Peebly (1928) 132 Okla. 84, 270 P. 311. But petitioners contend that the proviso upon which they rely is separate and distinct and is self-executing even though the first clause may not be. As to the proviso, another test is applicable. It is a recognized rule that a constitutional provision is not self-executing when it merely lays down general principles and does not supply a sufficient rule by means of which the right which it grants or reserves may be enjoyed and protected. 11 Am. Jur. 691, sec. 74; 12 C. J. 730, sec. 107. In State ex rel. Reardon v. Scales, Mayor (1908) 21 Okla. 683, 97 P. 584, the court said:

"A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the rigut given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law."

Under the application of this rule alone it would appear that the proviso is not self-executing. There is no method provided in the constitutional provision under discussion whereby the right of the people to place on the ballot the name of a nonpartisan candidate may be given force. There is no provision therein as to the method, time, or number of people required to place a nonpartisan candidate on the ballot. Moreover, in State ex rel. Smith v. State Election Board (1934) 169 Okla. 163, 36 P.2d 497, this court stated that "this proviso is not a self-executing constitutional provision." It is contended that this is mere dicta, but, assuming that it is, our further consideration convinces us that we should not depart from this view. We are further influenced in our conclusion by the fact that since statehood, although the law has been changed in other respects from time to time, the Legislature has always required nominating petitions for nonpartisan candidates to be filed within the time required for the filing of petitions by party candidates. S. L. 1907-1908, pp. 359-365; sec. 3303, R. L. 1910; sec. 6102, C. O. S. 1921, enacted in 1915; sec. 5756, O. S. 1931, enacted in 1931; and ch. 62, S. L. 1933, as amended by chapter 29, art. 2, S. L. 1937. This evidences the construction which has been placed upon this constitutional provision since 1908 by the members of our Legislature. They have always considered it as not self-executing, and this interpretation is entitled to great respect. 11 Am. Jur. 697, sec. 78; 12 C. J. 714, sec 66; Glasco v. State Election Board (1926) 121 Okla. 119, 248 P. 642, and authorities therein cited. Moreover, as early as 1910 this court held that the name of a nonpartisan candidate was not to be printed on the official ballot for the general election unless the nominating petition was filed within the time fixed for the filing of petitions for partisan candidates. thus in effect sustaining the constitutionality of an act similar to the one now under attack. State ex rel. Brennan v. Shelton (1910) 27 Okla. 322, 111 P. 545.

Petitioners rely strongly upon the views expressed in the dissenting opinion in Craig v. Bond (1932) 160 Okla. 34, 15 P.2d 1014. That case does not deal specifically with the right to place a nonpartisan candidate on the ballot.

Therefore we hold that the constitutional provision relied upon is not self-executing, and the act of the Legislature vitalizing the same is not unconstitutional.

Writ denied.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, WELCH, PHELPS, GIBSON, and DAVISON, JJ., concur. CORN, J., absent.