2004 OK CIV APP 1

**PARK EAST LTD. CO.,**
**Plaintiff/Appellant,**

v.

**Jack GORDON, Tulsa County Assessor, and the County Board of Equalization of Tulsa County, Defendants/Appellees.**

**No. 97,468.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Dec. 5, 2003.

John W. Hunt, Howard, Widdows & Bufogle, Tulsa, OK, for Plaintiff/Appellant.

Dick A. Blakeley, Assistant District Attorney, Tulsa County District Attorney's Office, Tulsa, OK, for Defendants/Appellees.

MITCHELL, Presiding Judge:

¶ 1 This is an appeal from a judgment of the District Court of Tulsa County regarding the 2001 *ad valorem* assessment the Tulsa County Board of Equalization made on certain real estate and improvements owned by Plaintiff/Appellant Park East Ltd. Co. The property at issue is a mobile home park located in Tulsa County, Oklahoma. Park East purchased the property in March, 2000. In December 2000, the Tulsa County Assessor determined the fair cash value of the property to be $1,355,000, the amount Park East paid for the property. Park East filed a protest with the Tulsa County Board of Equalization, asserting the value to be $667,500. In response to the evidence Park East presented in protest, the Board reduced the valuation to $1,195,000. Contending the Board's assessment was still too high, Park East appealed to the trial court, which approved the Board's decision. Because the trial court erroneously concluded as a matter of law that the Board's assessment was entitled to a presumption of correctness, we reverse.

¶ 2 Park East's mobile home park comprises two parcels of land, Nos. 27725–94–07–06570 and 27725–94–07–06800. The larger of the two tracts measures 524,000 square feet and consists of ninety-eight mobile home lots, an office building, and a swimming pool. The smaller of the two tracts measures 107,220 square feet and consists of twenty-four mobile home lots and a storage building. Many of the mobile home lots on both parcels have concrete pads, drives, and/or patios. Paved roads run throughout the park. Park East provides streetlights and pays for water and sewer usage.

¶ 3 In connection with the financing of its purchase, Park East's lender required an appraisal of the mobile home park. That appraisal set the fair market value at the sale price of $1,355,000. No other appraisal was done on the property until the present litigation was well under way. On its tax return for 2000, Park East valued its total assets in the mobile home park at $1,311.901.

¶ 4 John Szalay, one of Park East's principals, testified Park East's purchase of the property was a free and voluntary arm's-length transaction to which Park East committed without compulsion. He further admitted the value of the commercial improvements and the goodwill associated with the mobile home park were included in the sales price. In undertaking to buy the property, Park East relied on its knowledge of, and prior experience in, the mobile home park business.

¶ 5 On December 11, 2000, the Tulsa County Assessor's office determined the fair cash value of the real property of larger parcel to be $524,700 and that of its commercial improvements to be $590,600, for a total of $1,115,300. It assessed the fair cash value of the real property of the smaller parcel at $107,200 and that of its commercial improvements at $132,500, for a total of $239,700. According to the Assessor's valuation, the fair cash value of the two parcels together totaled $1,355,000—the purchase price paid by Park East.

¶ 6 Park East appealed this assessment to the Tulsa County Board of Equalization. The Board modified the valuation of the larger tract to $955,300 based on Park East's evidence its operating costs, particularly its water bills, were much higher than they had predicted in determining their purchase price. The Board did not alter the Assessor's valuation of the smaller parcel, however. Accordingly, the Board reduced the total fair cash value for the entire property from $1,355,000 to $1,195,000. Park East then appealed the Board's assessment to the trial court, which, in presuming the assessed value to be correct, came to the same conclusion as the Board. This appeal ensued.

¶ 7 Appeal to the district court of an order of a county equalization board fixing the assessed valuation of property for *ad valorem* tax purposes is *de novo*. 68 O.S. 2001 § 2880.1(A); *Jackson v. Bd. of Equalization of Pushmataha County*, 1995 OK CIV APP 35, ¶ 11, 892 P.2d 673, 676. In conducting a *de novo* review we claim plenary, independent, and non-deferential authority to examine a trial court's legal rulings and factual determinations. *Spears v. Shelter Mut. Ins. Co.*, 2003 OK 66, ¶ 2, 73 P.3d 865, 867; *see also Jackson*, 1995 ¶ 12, 892 P.2d at 676. The burden is on the taxpayer appellant to produce competent evidence to justify a change in value. 68 O.S.2001 § 2863. "[A]lthough Oklahoma law ordinarily requires the district court, in an appeal from an administrative order, to defer to the factual determinations of an administrative tribunal, Oklahoma law requires the district court, in an appeal from an order of the board of equalization, to conduct a trial de novo of both legal and factual issues without regard to the prior decision of the equalization board." *Jackson*, ¶ 13, 892 P.2d at 676.

¶ 8 The Oklahoma Constitution provides all property which may be taxed ad valorem shall be assessed at its fair cash value. Okla. Const. Art. 10, § 8. The legislature requires all taxable real property in Oklahoma to be assessed at its fair cash value as of January 1st of each year. 68 O.S.2001 § 2817(B). The fair cash value of property is the

> price at which a willing buyer would purchase property and a willing seller would sell property if both parties are knowledgeable about the property and its uses and if neither party is under any undue pressure to buy or sell and for real property shall mean the value for the highest and best use for which such property was actually used, or was previously classified for use, during the calendar year next preced-

ing the applicable January 1 assessment date.

68 O.S.2001 § 2802(18). "The county assessor estimates this fair cash value by making a market appraisal and calculates the assessed value by multiplying the estimated fair cash value by the assessment ratio." *In re Oneok Field Servs. Gathering, LLC*, 2001 OK 116, ¶ 9, 38 P.3d 900, 903.

¶ 9 In furtherance of the mandate in Okla. Const., Art. 10, § 8, the Legislature expressly has defined three different methodologies for assessing fair cash value. The "cost approach" uses an estimate of the current construction cost of improvements, subtracting accrued depreciation and adding the value of the land. 68 O.S.2001 § 2802(14). The "income and expense approach" considers the present value of the projected income stream. 68 O.S.2001 § 2802(20). Finally, the "sales comparison approach" arrives at fair market value through collection, verification, and screening of sales data. 68 O.S. 2001 § 2802(25).

¶ 10 The Tulsa County Assessor's office based its fair cash value assessment on the arm's-length sales price Park East paid for the property. It is the policy of the Assessor's office to use the sales price for assessment purposes if other information is not readily available. For its part, the Tulsa County Board of Equalization considered, along with the sales price, Park East's operating expenses, particularly its water bills, in deciding to reduce the Assessor's valuation. In addition to the valuation factors and witness testimony before the Assessor and the Board, the trial court had available to it Park East's rent records and the report of Park East's expert witness.[1]

¶ 11 In rendering its decision affirming the Board's assessment, the trial court correctly determined that Oklahoma Tax Commission Ad Valorem Tax Rule 710:10–1–3(g)[2] does

---

1. Park East's expert performed a commercial appraisal of the subject property utilizing a market/sales approach, a cost/replacement approach, and an income appraisal approach. We agree with the trial court that Park East's expert did not take into account the actual sales price of the property, and based at least some of his calculations on estimated rather than actual information relating to the property. For example, Park

East's expert built into certain of his calculations a fictional 10% vacancy factor, an assumed collection loss, and an assumed amount of "home office" expenses.

2. Oklahoma Tax Commission Ad Valorem Tax Rule 710:10–1–3(g) provides in pertinent part:

not apply to the present case because Park East is appealing the assessment of the Board, not the Assessor. Unlike the Assessor, the Board did not arrive at its fair cash value amount "simply [by] placing the property on at its sale price." Rather, its decision reflected Park East's operating costs as well.

¶12 The trial court cited *In re Assessment of Kansas City Southern Ry. Co.*, 1934 OK 281, ¶64, 33 P.2d 772 in concluding as a matter of law that "[a] presumption exists in reviewing the assessment of the Tulsa County Board Of Equalization in favor of the correctness of the determination of the value fixed by the board." It further cited *In re Assessment of Nat'l Bank of Tulsa*, 1941 OK 402, ¶7, 108 P.2d 130, in concluding as a matter of law that "[a]ssessed values are presumed to be fair and just and will be approved by the court unless it is clearly made to appear that the final assessed value is excessive or unjust or was arbitrarily fixed, or was determined upon some controlling formula which was erroneous, or determined by failing or refusing to consider certain pertinent facts or elements of value."

¶13 The cited cases refer to the trial court's standard of review for assessment decisions as it stood prior to the Legislature's 1989 addition of 68 O.S. § 2880.1 to Oklahoma's code of revenue and taxation. 1989 Okla. Sess. Laws, ch. 321, § 17. As cited above, 68 O.S.2001 § 2880.1(A) provides that the taxpayer's or county assessor's right of appeal from orders of the county board of equalization to the district court of that county shall be *de novo.* In a *de novo* review, the trial court shall determine questions of law and fact "without regard to the prior decision of the equalization board." [3] *Jackson,* ¶13, 892 P.2d at 676. Here, "the trial court clearly believed itself bound by the decision of the Board, so reciting in the journal entry of judgment" and thus misapplied the standard of review. *Id.* Accordingly, we reverse the order of the trial court and remand for a *de novo* determination of Park East's protest of the *ad valorem* valuation of its property.

¶14 REVERSED AND REMANDED.

HANSEN, J., and JONES, J., concur.

---

**Effect of conveyance of property.** If title to the property is transferred or conveyed, the parcel or real property shall be assessed at fair cash value as set forth by Section 8 of Article X of the Oklahoma Constitution. This valuation is to be based upon current market value standards *rather than simply placing the property on at its sale price,* and it is the responsibility of the county assessor to value the property at fair cash value consistent with applicable statutes and ad valorem rules.

(emphasis added).

3. While 68 O.S.2001 § 2880.1(E) does provide "[i]n all appeals *taken by the county assessor* the presumption shall exist in favor of the correctness of the county assessor's valuation and the procedure followed by the county assessor," (emphasis added), it is Park East, not the Tulsa County Assessor, who is appealing the Board's valuation herein. Hence, the presumption of correctness does not apply.