2006 OK CIV APP 147

**In the Matter of the ASSESSMENTS FOR THE YEAR 2003 OF CERTAIN PROPERTIES OWNED BY AFFORDABLE RESIDENTIAL COMMUNITIES 7, L.L.C. and AFFORDABLE RESIDENTIAL COMMUNITIES 8, L.L.C.**

**Affordable Residential Communities 7, L.L.C. and Affordable Residential Communities 8, L.L.C., Petitioners/Appellants,**

v.

**Canadian County Assessor, Respondent/Appellee.**

**No. 101,603.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Nov. 14, 2006.

400

JERRY L. GOODMAN, Judge.[1]

¶ 1 This is an appeal from the trial court's November 24, 2004, order granting summary judgment to the Canadian County Assessor upholding its valuation of taxpayer's property. The appeal was assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(a)(1), 12 O.S.2001 and Supp. 2003, ch. 15, app. 1. Based upon our review of the record and applicable law, we reverse and remand with instructions.[2]

## FACTS

¶ 2 Petitioners, Affordable Residential Communities 7, L.L.C. (ARC 7) and Affordable Residential Communities 8, L.L.C. (ARC 8), are single-member limited liability companies (L.L.C.'s) owned by ARC Real Estate Holdings, L.L.C. (ARC Real Estate), a Delaware L.L.C. ARC Real Estate owns and controls a number of single-purpose L.L.C.'s, which in turn holds title to individual mobile home communities. ARC Real Estate is owned by Affordable Residential Communities, L.P., whose general partner is Affordable Residential Communities, Inc., formerly ARC IV REIT, Inc., a Maryland Corporation.

¶ 3 In 2002, ARC Real Estate sought to acquire refinancing for certain properties owned by its single-member L.L.C.'s. As a condition of refinancing, lenders required the title to the properties be transferred from entities owned and controlled by ARC Real Estate to other entities owned and controlled by ARC Real Estate. Accordingly, on June 3, 2002, title to Westlake Mobile Home Park (Westlake), located in Yukon, Oklahoma, was transferred from ARC III, L.L.C. (ARC III) by warranty deed to ARC 8. On December 23, 2002, title to Overholser Village Mobile Home Park (Overholser), located in Yukon, Oklahoma, was transferred from ARC Communities 3, L.L.C. (ARC 3) by warranty deed to ARC 7. ARC 3, ARC 7, ARC III, and

William K. Elias, Linda Jo Blan–Byford, Elias, Books, Brown & Nelson, P.C. Oklahoma City, OK, for Appellants.

Paul Hesse, Assistant District Attorney, El Reno, OK, for Appellee.

James R. Waldo, J. Matthew Thompson, Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, OK, for Amicus Curiae, John A. Henry & Co., Ltd.

1. This case was reassigned to the authoring judge on June 27, 2006.

2. Shortly after filing their petition in error, Petitioners filed a request to supplement the record on appeal with the transcript of the summary judgment hearing. The Oklahoma Supreme Court deferred ruling to the reviewing court. We note the required certification of the Canadian County District Court Clerk is appended to the copy of the proffered transcript and Respondent has not objected to inclusion of the transcript. Accordingly, we grant Petitioners' request to supplement the record.

ARC 8 are all entities owned and controlled by ARC Real Estate.

¶ 4 For tax year 2003, the Canadian County Assessor (County) assessed Overholser at a fair cash value of $2,024,637.00, an increase over tax year 2002's assessed fair cash value of $1,287,110.00. Westlake was assessed at a fair cash value of $3,790,342.00 for tax year 2003, also an increase over tax year 2002's assessed fair cash value of $2,283,166.00.

¶ 5 Petitioners filed a protest with the County Board of Equalization. After a hearing, the Board denied the request and upheld the two (2) assessments. Petitioners filed a petition in district court on June 9, 2003, seeking review of and a reduction in the assessments. Petitioners filed a joint motion for summary judgment on August 11, 2004, claiming the assessed increase in the fair cash value of Overholser and Westlake in excess of five percent (5%) violated Oklahoma's Constitution, Article 10, § 8B. In addition, Petitioners asserted the sales prices for the properties, as referenced by the Documentary Stamp Taxes on the warranty deeds transferring the properties, were "not representative of an 'arms length sale' because the sales prices include values for allocations of debt and costs related to the restructuring of ARC Real Estate Holdings."

¶ 6 County filed a response on August 25, 2004, asserting the ad valorem tax exemption afforded by Oklahoma's Constitution, Article 10, § 8B, did not apply to transfers of real property from a wholly owned company to the company's owner or to companies owned by the owner. In addition, County asserted the ad valorem tax exemption provided by 68 O.S.2001 and Supp.2002, § 2802.1(A)(4)(g) was unconstitutional.

¶ 7 Following a hearing, the trial court issued a memorandum opinion on October 18, 2004, finding § 2802.1(A)(4)(g) "contemplate[d] a real person conveying real property and thus a conveyance from an L.L.C. to an L.L.C. when both L.L.C.'s are owned by a third L.L.C. is not contemplated in that statute, and therefore there is no statutory au-

thority to exempt this type of conveyance from the provisions of Article X, Section 8B of the Oklahoma Constitution." The trial court declined to address the constitutionality of § 2802.1(A)(4)(g). Based on its conclusions, the trial court denied Petitioners' motion for summary judgment and instead, granted summary judgment to County. A journal entry was filed on November 24, 2004, memorializing the court's findings. Petitioners appeal.[3]

## STANDARD OF REVIEW

¶ 8 Appeal to the district court of an order of a county equalization board fixing the assessed valuation of property for ad valorem tax purposes is reviewed de novo. 68 O.S.2001, § 2880.1(A); *Park East Ltd., Co. v. Gordon*, 2004 OK CIV APP 1, ¶ 7, 82 P.3d 1031, 1033; *Jackson v. Board of Equalization of Pushmataha Cty.*, 1995 OK CIV APP 35, ¶ 11, 892 P.2d 673, 676. In conducting a de novo review, we claim plenary, independent, and non-deferential authority to examine a trial court's legal rulings and factual determinations. *Spears v. Shelter Mut. Ins. Co.*, 2003 OK 66, ¶ 2, 73 P.3d 865, 867; *Jackson*, 1995 OK CIV APP 35, at ¶ 12, 892 P.2d at 676.

## ANALYSIS

### I. Constitutional and Statutory Framework

¶ 9 On November 5, 1996, Oklahoma voters approved State Question No. 676. As a result, Article 10, § 8B was added to the Oklahoma Constitution, thereby placing a five percent (5%) limit on increases to the fair cash value of real property for ad valorem tax purposes providing the property is not transferred, changed, or conveyed to another person. Section 8B provides, in relevant part:

> Despite any provision to the contrary, the fair cash value of any parcel of locally assessed real property shall not increase by more than five percent (5%) in any taxable year. The provisions of this sec-

---

**3.** After reviewing the record and applicable law, this court ordered the parties to brief the issue of 68 O.S.2001 and Supp.2002, § 2802.1(A)(4)(g)'s constitutionality. The parties complied and filed briefs on August 24, 2006, and September 1, 2006, respectively. In addition, John A. Henry & Co., LTD. filed a brief on September 15, 2006, as amicus curiae.

tion shall not apply in any year when title to the property is transferred, changed, or conveyed to another person, or when improvements have been made to the property. If title to the property is transferred, changed, or conveyed to another person, the property shall be assessed for that year based on the fair cash value as set forth in Section 8 of Article X of this Constitution. . . .

The Legislature shall enact any laws necessary to implement the provisions of this section.

Okla. Const. Art. 10, § 8B.[4]

¶ 10 In 1997, the Legislature enacted 68 O.S. § 2802.1 to implement § 8B.[5] Section 2802.1 provided, in relevant part:

A. For purposes of implementing Section 8B of Article X of the Oklahoma Constitution:

1. "Any person" means any person or entity, whether real or artificial, other than the present owner;

. . .

4. "Transfers, change or conveyance of title" means all types of transfers, changes or conveyances of any interest, whether legal or equitable. However, "transfers, change or conveyance of title" shall not include the following:

a. deeds recorded prior to January 1, 1996,

b. deeds which secure a debt or other obligation,

c. deeds which, without additional consideration, confirm, correct, modify or supplement a deed previously recorded,

d. deeds between husband and wife, or parent and child, or persons related within the second degree of consanguinity, without actual consideration therefore, or deeds between any person and an express revocable trust created by such person or such person's spouse,

e. deeds of release of property which is security for a debt or other obligation,

f. deeds of partition, unless, for consideration, some of the parties take shares

greater in value than their undivided interests,

g. deeds made pursuant to mergers of partnerships, limited liability companies or corporations,

h. deeds made by a subsidiary corporation to its parent corporation for no consideration other than the cancellation or surrender of the subsidiary's stock, or

i. any deed executed pursuant to a foreclosure proceeding in which the grantee is the holder of a mortgage on the property being foreclosed, or any deed executed pursuant to a power of sale in which the grantee is the party exercising such power of sale or any deed executed in favor of the holder of a mortgage on the property in consideration for the release of the borrower from liability on the indebtedness secured by such mortgage except as to cash consideration paid.

68 O.S. Supp.1997, § 2802.1(A). Effective June 6, 2002, the Legislature amended § 2802.1(A)(4)(g), adding the following language:

g. deeds made pursuant to mergers of partnerships, limited liability companies or corporations, *or deeds pursuant to which property is transferred from a person to a partnership, limited liability company or corporation of which the transferor or the transferor's spouse, parent, child, or other person related within the second degree of consanguinity to the transferor, or trust for primary benefit of such persons, are the only owners of the partnership, limited liability company or corporation* . . . .

68 O.S.2001 and Supp.2002, § 2802.1(A)(4)(g) (emphasis added).

## II. Parties' Contentions

¶ 11 Petitioners rely on § 2802.1(A)(4)(g) to support its claim the transfers of Overholser's and Westlake's title did not constitute a "transfer, change, or conveyance of title" as contemplated in § 8B since the properties were conveyed among entities owned by a common owner. Thus, Petitioners assert the

4. Article 10, § 8B was effective January 1, 1997.

5. *See* 1997 Okla. Sess. Laws ch. 304, § 3.

properties' fair cash values could not be increased by more than five percent (5%) in any taxable year.

¶ 12 Furthermore, although Petitioners acknowledge the Legislature is excluding certain deeds from the definition of "transfers, changes, or conveyances of title," Petitioners assert the Legislature has plenary power to define terms as it sees fit. *See Gulf Refining Co. v. Jenkins*, 1944 OK 227, 151 P.2d 419. Since § 8B did not define material terms and further directed the Legislature to enact legislation "necessary to implement" its provision, § 8B is not operative without supplemental or enabling legislation, *i.e.*, it is not self-executing. As a result, § 2802.1(A)(4) represents a valid exercise of legislative authority.

¶ 13 Finally, Petitioners contend the deeds listed in § 2802.1(A)(4)(a-i) merely describe transactions that do not qualify as "transfers, changes or conveyances of title." Therefore, the properties are still subject to the five percent (5%) valuation cap. Petitioners note the property continues to be valued, assessed, and taxes paid.

¶ 14 County disagrees and asserts § 2802.1(A)(4)(g) specifically, and § 2802.1(A)(4) in general, effectively creates ad valorem tax exemptions not otherwise granted by the Oklahoma Constitution in violation of Article 5, § 50, thereby causing property to be undervalued in violation of Article 10, § 8.[6] Section 8 "is a prohibition against undervaluation of property when it is taxed ad valorem." *In re Diehr*, 1935 OK

1015, ¶ 18, 50 P.2d 725, 728. Thus, County asserts the exemptions are unconstitutional.

¶ 15 County further asserts the Legislature overstepped its grant of authority by defining terms in § 8B in a manner incompatible with the natural and ordinary meaning of such terms. County contends the term "transferred" as used in § 8B is clear, unambiguous, and unqualified.

¶ 16 Before we address the parties' contentions, we note the transfers of the properties in question occurred under different versions of § 2802.1(A)(4)(g). Westlake's title was conveyed on June 3, 2002, immediately prior to the effective date of the legislative amendment to § 2802.1(A)(4)(g), which occurred on June 6, 2002. Accordingly, Westlake's conveyance is governed by the original version of § 2802.1(A)(4)(g). The Overholser conveyance occurred on December 3, 2002, and is governed by the current amended version of § 2802.1(A)(4)(g). County asserts both versions are unconstitutional exemptions.

## III. Constitutionality of § 2802.1(A)(4)

¶ 17 In ascertaining the constitutionality of a challenged statute, we note a legislative act is presumed to be constitutional and will be upheld unless it is "clearly, palpably and plainly inconsistent with the Constitution." *Reherman v. Oklahoma Water Resources Bd.*, 1984 OK 12, ¶ 11, 679 P.2d 1296, 1300; *Miller v. Okla. Alcoholic Beverage Laws Enf. Comm'n*, 1990 OK CIV APP 74, 797 P.2d 1013. Whenever possible, statutes should be construed so as to uphold

---

**6.** Article 5, § 50 provides: "The Legislature shall pass no law exempting any property withis [*sic*] this State from taxation, except as otherwise provided in this Constitution."

Article 10, § 8 provides, in relevant part: "A. Except as otherwise provided in Article X of this Constitution, beginning January 1, 1997, all property which may be taxed ad valorem shall be assessed for taxation as follows:

1. Tangible personal property shall not be assessed for taxation at less than ten percent (10%) nor more than fifteen percent (15%) of its fair cash value, estimated at the price it would bring at a fair voluntary sale;

2. Real property shall not be assessed for ad valorem taxation at a value less than eleven percent (11%) nor greater than thirteen and one-half percent (13.5%) of its fair cash value for the highest and best use for which such

property was actually used, or was previously classified for use, during the calendar year next preceding the first day of January on which the assessment is made. The transfer of property without a change in its use classification shall not require a reassessment based exclusively upon the sale value of such property. In connection with the foregoing, the Legislature shall be empowered to enact laws defining classifications of use for the purpose of applying standards to facilitate uniform assessment procedures in this state; and

3. All other property which is assessed by the State Board of Equalization shall be assessed for ad valorem taxation at the percentage of its fair cash value, estimated at the price it would bring at a fair voluntary sale, at which it was assessed on January 1, 1996."

their constitutionality. *Earnest, Inc. v. Le-Grand,* 1980 OK 180, ¶ 8, 621 P.2d 1148, 1152. We do not look to the Constitution to determine whether the legislature is authorized to do an act, but rather to see whether the act is prohibited. *Draper v. State,* 1980 OK 117, ¶ 10, 621 P.2d 1142, 1146. A party challenging the constitutionality of a legislative enactment has a heavy burden of showing constitutional infirmity and every presumption is to be indulged in favor of the constitutionality of a statute. *Fent v. Oklahoma Capitol Improvement Auth.,* 1999 OK 64, 984 P.2d 200.

¶ 18 The Legislature has plenary power to tax, subject only to constitutional restrictions and the will of the people expressed through elections. *In re Oneok,* 2001 OK 116, ¶ 8, 38 P.3d 900, 903, *citing Oklahoma Indust. Auth. v. Barnes,* 1988 OK 98, 769 P.2d 115. The Oklahoma Constitution prohibits the Legislature from passing any law exempting property from taxation except as otherwise provided in the Constitution. Okla. Const. Art. 5, § 50. In addition, the Constitution prohibits the undervaluation of property when it is taxed ad valorem. Okla. Const. Art. 10, § 8; *see also Save Ad Valorem Funding for Students v. Oklahoma Det. of Envir. Quality,* 2006 OK CIV APP 53, 135 P.3d 823 (approved for publication by the Oklahoma Supreme Court), *citing In Re Diehr,* 1935 OK 1015, 50 P.2d 725.

¶ 19 When Oklahoma voters adopted the Constitutional amendment to Article 10, § 8 in 1996, they approved a five percent (5%) limit on increases to the fair cash value of real property for ad valorem tax purposes, unless the property had been transferred, changed, or conveyed to another person. The amendment did not define the material terms used in the provision. In addition, the amendment instructed the Legislature to "enact any laws necessary to implement the provisions of this section." Pursuant to this language, Petitioners assert § 8B was not "self-executing," and that § 2802.1(A)(4) was a valid exercise of the Legislature's authority.

¶ 20 Where a Constitutional provision contains a suggestion that additional legislation is needed for carrying its provisions into effect, the provision is not self-executing. *See Maddox v. Hunt,* 1938 OK 495, 83 P.2d 553. If a provision is not self-executing, the Legislature may act to implement the Constitution, and may qualify, curtail, or extend its provisions. *Independent Sch. Dist. No. 9 of Tulsa Cty. v. Glass,* 1982 OK 2, ¶ 13, 639 P.2d 1233, 1238. However, the Legislature has no power to grant exemptions which are beyond constitutional limits. *Id.*

¶ 21 Conversely, constitutional provisions which exempt certain classes of property or those which direct that the Legislature shall not tax designated property are self-executing. *Glass,* 1982 OK 2, at ¶ 13, 639 P.2d at 1238. A constitutional provision is self-executing if it supplies a sufficient rule by means of which the right given may be protected, or the duty imposed may be enforced. *Maddox,* 1938 OK 495, 83 P.2d 553. In other words, in a self-executing provision, no further legislation is needed to put it in force. *In re McNaught,* 1909 OK CR 10, 1 Okla.Crim. 528, 99 P. 241, 252. A self-executing constitutional provision cannot be modified or extended by the Legislature. *Kiowa Cty. Excise Bd. v. St. Louis–San Francisco Ry. Co.,* 1956 OK 157, 301 P.2d 677. If a constitutional provision is self-executing, the Legislature has no power to abridge or extend its pronouncement, whether by construction or otherwise. *Id.*

¶ 22 In the present case, although § 8B appears to be self-executing in part ("the fair cash value of any parcel of locally assessed real property shall not increase by more than five percent (5%) in any taxable year"), a clear reading of the provision establishes that it is not self-executing ("[t]he Legislature shall enact any laws necessary to implement the provisions of this section."). "A constitutional provision may be self-executing in one part and not self-executing in another part." *See* 16 Am. Jur.2d Constitutional Law § 108. Therefore, it became the function of the Legislature to define the material terms and to enact the laws necessary to implement the provisions of the amendment into effect. *See e.g., Mil-*

*ler,* 1990 OK CIV APP 74, at ¶ 8, 797 P.2d at 1016; *see also* Okla. Const. Art. 5, § 45 ("The Legislature shall pass such laws as are necessary for carrying into effect the provisions of this Constitution."). The parties disagree on whether § 2802.1(A)(4) resulted in ad valorem tax exemptions in violation of Oklahoma's Constitution or whether it was a proper exercise of the Legislature's authority.

¶ 23 When the Legislature initially enacted § 2802.1(A)(4) to implement § 8B, it defined "person," as a "person or entity, whether real or artificial, other than the present owner." In addition, it defined "transfers, changes, or conveyances of title," to exclude deeds securing debts, deeds recorded prior to January 1, 1996, deeds which, without additional consideration, only corrected or modified a previously recorded deed, and deeds between closely related family members, among other things. *See* § 2802.1(A)(4)(a-i). The 2002 amendment to § 2802.1(A)(4), at issue in the present case, added the following deeds:

> g. deeds made pursuant to mergers of partnerships, limited liability companies or corporations, *or deeds pursuant to which property is transferred from a person to a partnership, limited liability company or corporation of which the transferor or the transferor's spouse, parent, child, or other person related within the second degree of consanguinity to the transferor, or trust for primary benefit of such persons, are the only owners of the partnership, limited liability company or corporation* . . . .

*See* § 2802.1(A)(4)(g) (emphasis added).

██ ¶ 24 In 2003, the Oklahoma Attorney General addressed the constitutionality of the 2002 amendment to § 2802.1(A)(4)(g).[7] *See* 2003 OK AG 39. The Attorney General held the Legislature acted outside the purview of the authority given to it in the Constitution when it enacted the 2002 amendment, creating exceptions to the constitutional mandate where none existed.

The Constitution states: "The Legislature shall enact any laws necessary to *implement* the provisions of this section." Okla.

Const. art. X, § 8B (emphasis added). Implement is defined as "to carry out: accomplish, fulfill." Webster's Third New International Dictionary 1134 (3d ed.1993). Nothing in the ordinary definition of implement anticipates the *creation of an exception* to that which is to be *carried out.* Even construing any limitation on the Legislature's power strictly, as we must, we find no constitutional language which allows the Legislature to *eliminate* certain transactions from being transfers, changes or conveyances of title, if that transfer, change or conveyance is to another person. *Id.* at ¶ 8 (emphasis in original). The Attorney General held the 2002 amendment was unconstitutional.

¶ 25 We respectfully disagree with the Attorney General. The Attorney General has not shown these "exceptions" create an unconstitutional exemption. We have examined § 8B and find no restraints prohibiting the Legislature from enacting the statutory scheme at issue. In approving and adopting § 8B, Oklahoma voters clearly sought to limit the annual increase in the fair market value of their real property for purposes of ad valorem taxation as long as they retained ownership of that property. If the property was transferred, changed, or conveyed to another person or entity, the limit on ad valorem taxation no longer applied.

¶ 26 The provisions enacted by the Legislature in § 2802.1(A)(4)(a-g) permit the owner of the property to encumber, release, correct, merge, or transfer the title to the property to an entity owned by the owner or close relative of the owner. These are all instances of ownership. The common thread in each transaction, whether it is in an individual capacity, or as trustee, or as owner of an L.L.C. or a corporation, is that the owner retains ownership of the property after the transaction or transfer of the deed. The property is not transferred, changed, or conveyed to a third person or entity. The owner does not lose the right of control, nor does the owner divest himself of ownership of the property.

---

7. Attorney General opinions are persuasive authority. *National Cowboy Hall of Fame & Western Heritage Ctr. v. State ex rel. Ok. Human Rights*

*Comm.,* 1978 OK 76, 579 P.2d 1276; *McMullan v. County Bd. of Tax Roll Corrs.,* 2005 OK CIV APP 61, 119 P.3d 781.

¶ 27 Furthermore, these transactions do not remove the property from the tax rolls or cause the property to be undervalued as asserted by County. County may increase its assessment of the property each year to reflect the property's current fair market value, but only in incremental steps in accordance with the voter's mandate in § 8B. As long as the property is not transferred, changed, or conveyed to a third person or entity, the fair cash value cannot be assessed by more than five percent (5%) in any taxable year.

¶ 28 The statutory scheme at issue is distinguishable from that considered by the Court of Civil Appeals in *Save Ad Valorem Funding for Students v. Oklahoma Dept. of Envir. Equality,* 2006 OK CIV APP 53, 135 P.3d 823 (approved for publication by the Oklahoma Supreme Court). The statutory provision at issue in *Save,* 68 O.S.2001 and Supp.2004 § 2817(E), excluded the value of desulphurization equipment from the assessment and payment of taxes on oil refineries. The court held that by withdrawing the equipment from ad valorem taxation, the statute effectively created an ad valorem exemption. *Id.* at ¶ 10, at 827. Therefore, § 2817(E) violated Article 5, § 50 since there was no substitute tax, and Article 10, § 8 since it allowed property to be assessed at less than ten percent (10%) of its fair cash value. *Id.*

¶ 29 In the present case, § 2802.1(A)(4)(g) is not withdrawing property from ad valorem taxation. In each instance, all property remains on the tax rolls and is subject to ad valorem taxation. The property is valued by the county assessor and taxes are assessed and paid each year. It is only the property's increase in value in excess of five percent (5%) that is capped and not assessed, as mandated under § 8B. In implementing the constitutional amendment, the Legislature simply qualified the provisions of § 8B to provide that the owner of a property may encumber, release, correct, or transfer the title to an entity owned by the owner or close relative of the owner without losing the protection of § 8B. *See Glass,* 1982 OK 2, at ¶ 13, 639 P.2d at 1238 (the Legislature may act to implement the Constitution, and may qualify or curtail its provisions). As discussed previously, § 2802.1(A)(4)(a-g) is consistent with the purpose behind the enactment of § 8B.

¶ 30 Accordingly, we have examined the Constitution and find no restraints prohibiting the Legislature from enacting the statutory scheme at issue. Section 2802.1(A)(4)(a-g) does not create ad valorem tax exemptions in violation of Article 5, § 50 and does not cause property to be undervalued in violation of Article 10, § 8. County's assertion that § 2802.1(A)(4)(a-g) is unconstitutional is without merit.

### IV. Overholser and Westlake's Conveyances

¶ 31 In the present case, Overholser's and Westlake's title was transferred from entities owned and controlled by ARC Real Estate to other entities owned and controlled by ARC Real Estate. In transferring the deeds between entities owned by it, ARC Real Estate retained control and ownership over the properties. It is undisputed that the properties' titles were never transferred or conveyed to a third person or entity, but rather remained under the same ownership and control after the transfers were executed. Pursuant to § 8B, the properties' fair cash values could not be increased by more than five percent (5%). The trial court erred in determining otherwise.

### CONCLUSION

¶ 32 Accordingly, the trial court's November 24, 2004, order granting summary judgment to the Canadian County Assessor is reversed and the matter remanded to the trial court with instructions to the court to enter judgment to Petitioners on its motion for summary judgment.

¶ 33 REVERSED AND REMANDED WITH INSTRUCTIONS.

WISEMAN, P.J., and REIF, J. (sitting by designation), concur.