2014 OK CIV APP 90

AMERICAN SOUTHWEST PROPERTIES, INC., an Oklahoma corporation, and Boomer Properties, LLC, a Texas Limited Liability Company, Plaintiffs/Appellants,

v.

TULSA COUNTY BOARD OF EQUALIZATION and Tulsa County Assessor, Ken Yazel (in his official capacity only), Defendants/Appellees.

No. 110942.

Court of Civil Appeals of Oklahoma, Division No. 3.

Nov. 4, 2014.

James E. Green, Jr., Conner & Winters, LLP, Tulsa, OK, for Plaintiffs/Appellants.

Leisa S. Weintraub, Tulsa County Assessor's Office, Tulsa, OK, for Defendant/Appellee, Tulsa County Assessor Ken Yazel.

Sean Paul Rieger, Norman, OK, for Amicus Curiae, Oklahoma State Homebuilders Association, Inc.

BAY MITCHELL, Judge.

¶1 Plaintiffs/Appellants American Southwest Properties, Inc. and Boomer Properties, LLC (Taxpayers)[1] appeal from a district court judgment on Taxpayers' appeal from an unsettled determination rendered by the Tulsa County Board of Equalization on the 2011 assessment of ad valorem taxes against Taxpayers' property. After a non-jury trial, the trial court concluded: (1) Taxpayers' use of the subject property was not true agricul-

---

1. Boomer Properties, LLC owns 25% interest in the subject tracts, while American Southwest Properties, Inc. owns 75% interest in the property.

tural use as contemplated by statutory law; (2) the property should be classified and valued as commercial property for the 2011 tax year; and (3) Taxpayers failed to meet their burden to produce competent evidence to justify a change in value as assessed by Tulsa County Assessor, Ken Yazel (Assessor). Taxpayers appeal the classification and valuation determinations.[2]

¶ 2 The subject property consists of two Tulsa County parcels, approximately 10 acres and 26 acres, respectively.[3] From the time of Taxpayers' 2002 purchase of the property (a single 50 acre tract at that time) Taxpayers baled grass grown thereon. Assessor classified the parcels as agricultural for purposes of ad valorem taxation. In 2007, Taxpayers sold a 10 acre tract in the middle of their property to Verizon Wireless, which built a commercial building and other structures thereon.[4]

¶ 3 For the 2011 tax year, the Assessor changed the use classification of the subject parcels to commercial and determined the fair cash value of the property accordingly. In March 2011, Assessor sent Taxpayers a Notice of Change of Assessed Value of Real Estate, reflecting that the fair market value of the 26 acre parcel was changed from $5,250 in 2010 to $1,290,400 in 2011. Similarly, the fair market value of the 10 acre parcel increased from $2,180 in 2010 to $1,887,000 in 2011. Taxpayers filed an informal protest of the classification change and valuation, which resulted in a reduction of the fair market value of the 10 acre parcel (from $1,887,000 to $1,415,300). Taxpayers thereafter filed a formal appeal with the Tulsa County Board

of Equalization for each parcel, urging the classification should remain agricultural as in past years and that the value of the land should not change from the 2010 tax year assessed value. For reasons unclear from the record, only two members of the Board were present when the matter came on for hearing, and ultimately they could not reach a unanimous decision. It is from this unsettled determination that Taxpayers appeal.

■ ¶ 4 Appeal to the district court of an order of a county equalization board fixing the assessed valuation of property for ad valorem tax purposes is de novo. 68 O.S. 2011 2880.1(A); *Jackson v. Bd. of Equalization of Pushmataha County*, 1995 OK CIV APP 35, ¶ 11, 892 P.2d 673 (explaining "that the district court pays no deference to the lower tribunal's decision, and conducts a *new* trial on questions of both law and fact"). The burden is on the taxpayer appellant to produce competent evidence to justify a change in value. *Park East Ltd. Co. v. Gordon*, 2004 OK CIV APP 1, 7, 82 P.3d 1031.

¶ 5 First, we note it is undisputed that as a result of Taxpayers' informal protest, a 5% cap was placed on the increase of the taxable value of the subject property in accordance with Okla. Const. Art. 10, 8B. Thus, while the classification of the property changed from agricultural use to commercial use (resulting in a substantial market value change), the total *taxable* value of the properties increased only 5% from the previous tax year. Specifically, where the taxable value of the 26 acre parcel was $5,250 in 2010, that value increased 5% to $5,512 in 2011.[5] Similarly,

2. Civil proceedings were initiated via two separate lawsuits (CV–2011–588 and CV–2011–589) but they were consolidated below by the trial court's September 20, 2011 agreed Order Granting Assessor's Motion to Consolidate.

3. These tracts are located in the northeast corner and the northwest corner of the Amberjack subdivision in Tulsa County, Oklahoma.

4. Taxpayers purchased the property in 2002 for $650,000. They sold the 10 acre tract to Verizon Wireless for $1.8 million in 2007.

5. The formula for calculating ad valorem tax on the 26 acre tract in 2010 *before the property was reclassified* is as follows:

$5,250 (fmv and taxable value) × .11 (assessment ratio) = $578 (gross assessed value).
$578 × .13001 (tax rate of $130.01 per thousand) = $75 (approx. tax owed).
The formula for calculating the tax on the same property *after the 2011 reclassification but without the 5% cap applied:*
$1,290,400 (fmv) × .11 = $141,944 (gross assessed value).
$141,944 × .13001 = $18,454 (approx. tax owed without application of 5% cap).
*After the reclassification and with the 5% cap applied:*
$5,250 (previous year taxable value) × 5% = $262.50.
$5,250 + $262.50 = $5,512.50 (taxable value as increased by 5%).
$5,512.50 (taxable value) × .11 = $606.38.

the taxable value of the ten acre parcel was $2,180 in 2010 and that value increased 5% to $2,289 in 2011.[6]

¶6 Jack Wright, the president of American Southwest Properties, Inc. and principal owner/manager of the properties [7] testified at trial that he purchased the property for investment purposes and there were no commercial buildings located thereon. He hired contractors to cut and bale the grass and haul it away, but he acknowledged that he has never received a profit from this use of the property.[8] He further testified the benefit received from the baling of hay was in maintenance of the property. His affidavits submitted in evidence indicate he represented the property to be "cropland."

¶7 Documentary evidence at trial included a covenant (filed of record in 2002) applicable to the development in which the property was located, which contained use limitations [9] and lawn maintenance requirements.[10] Mr. Wright testified that as the owner of the property, he was required to cut the grass on the property in furtherance of his duty to keep the property well maintained.

¶8 The evidence demonstrates that only one of the two tracts (the 26 acre tract) was used for cutting/baling of hay as of January 2011. The primary contractor, who was hired to cut the grass on the property, testi-

fied he generally only cut it once or twice per year and that no other planting or cultivation was done on the property.

¶9 Assessor testified to the recent construction of a bridge and a roadway, which were built on easements across the subject property (enabling access to the Verizon Wireless building) which demonstrates a change in the use of the property. Additionally, documentary evidence demonstrates Assessor's office implemented an Agricultural Land Use Classification Policy in 2010, which provided guidelines for the Assessor's staff in determining what properties qualify for the agricultural use classification.[11] Assessor estimated that Policy resulted in a tremendous reduction in the number of properties qualifying for agricultural use classification, particularly in platted subdivisions. When asked if the presence of a bale of hay or several bales of hay was indicative of agricultural use, Assessor testified, "It's not determinative. It's persuasive, but if it's just a mowing contract, that's all it is—a way to haul off the grass that gets mowed...."

¶10 For purposes of ad valorem taxation, the Oklahoma Constitution and statutes both generally require the value of the property be the fair cash value estimated at the price the property would bring at a fair

---

$606.38 × .13001 = $79 (approx. tax owed with cap).

**6.** The principal owner/manager of the properties testified there was no transfer of ownership of the property, which would otherwise exempt it from application of the 5% fair cash value cap.

**7.** Plaintiff/Appellant Boomer Properties, LLC is owned by Mr. Wright's father and his wife. Mr. Wright was authorized to appear at trial on behalf of Boomer Properties, LLC.

**8.** The contractor hired to cut and bale the grass had a verbal agreement with Mr. Wright to cut and bale the grass on the property. That contractor would then use the grass as hay to feed his horses. Although Mr. Wright had the option of keeping 10% of the hay, he never kept any of the hay bales.

**9.** 5 of The First Amendment to Protective Covenants provides as follows:

The Property may be used only for office, retail, research and development, commercial recreational facilities, restaurants with alcohol sales,

retail sales and services with underground storage tanks, banks, convenience stores, light industrial use which has office space with light warehouse or manufacturing, scientific research, medical or hotel uses, other commercial support functions or other uses specifically approved by the Owners Committee.

**10.** Paragraph 7 of The First Amendment to Protective Covenants provides "[l]awns to be well maintained except compensatory storage area which may grow to be baled for agricultural purposes." Wright testified the compensatory storage area was located "some hundreds of feet" in the northwest corner of the property, but that the compensatory storage area ceased to exist sometime in 2001, 2004 or 2005.

**11.** Tax Assessor testified that when he first came into office in January 2003, any property in excess of five acres was automatically classified as agricultural use (resulting in the erroneous classification of many Tulsa County properties). The Policy was created in furtherance of Assessor's effort to satisfy the "need for equality" in assessment of property used for agricultural purposes.

voluntary sale. *See* Okla. Const. Article 10, 8; 68 O.S. 2817 [12]; *Cantrell v. Sanders,* 1980 OK 43, 610 P.2d 227. Title 68 O.S.Supp.2014 2817(B) provides in pertinent part as follows:

All taxable real property shall be assessed annually as of January 1, at its fair cash value, estimated at the price it would bring at a fair voluntary sale for:

1. The highest and best use for which the property was actually used during the preceding calendar year; or

2. The highest and best use for which the property was last classified for use if not actually used during the preceding calendar year.

*Id.*[13]

¶ 11 "To arrive at fair cash value [also referred to as the fair market value], an assessor must do two things: determine how the real property being assessed was actually used or classified for use during the assessment year and obtain relevant and reliable market data about the value of property of that kind." *Liddell v. Heavner,* 2008 OK 6, 20, 180 P.3d 1191. Real property must be valued at its "use value" as opposed to market value for purposes of ad valorem taxation. *Cantrell,* 1980 OK 43, 610 P.2d 227, 230.[14] The purpose of this method is "to protect land located in prime locations but used for agricultural purposes from grossly inflated valuations due to the proximity of metropolitan areas, industrial areas, highways, lakefront locations, or the like." *Id.* Many factors (such as the number of acres) are pertinent to the determination of whether a tract was actually used for agricultural purposes, but no single factor is determinative. Oklahoma Attorney General's Opinion, 1999 OK AG 8, 7.

¶ 12 As expressly noted in Assessor's 2010 Agricultural Land Use Classification Policy, Oklahoma law is silent on the definition of agriculture and/or agricultural use for ad valorem tax purposes. Thus, the Policy set forth guidelines and factors to be considered (by Assessor's staff appraisers) in the determination of whether a property meets the criteria for agricultural use classification for ad valorem tax purposes. The primary test referenced in Assessor's Policy for determination of whether the property should be classified as agricultural use is as follows: whether the property was "being used for what would ordinarily be considered a farming or ranching operation undertaken for profit." [15] If the answer to this test is affirmative, then the inquiry ends and the land is classified as agricultural use for purposes of ad valorem taxation.[16]

¶ 13 On appeal, Taxpayers assert Assessor's Agricultural Land Use Classification

---

12. "Actual fair cash value" is statutorily defined as follows:

The value or price at which a willing buyer would purchase property and a willing seller would sell property if both parties are knowledgeable about the property and its uses and if neither party is under any undue pressure to buy or sell and for real property shall mean the value for **the highest and best use for which such property was actually used,** or was previously classified for use, during the calendar year next preceding the applicable January 1 assessment date.

68 O.S. 2802(18) (emphasis added).

13. " 'Taxable fair cash value' means the actual fair cash value of locally assessed real property as capped by Section 8B of Article X of the Oklahoma Constitution." 68 O.S. 2802(28).

14. "Use value" is defined as "the basis for establishing fair cash value of real property pursuant to the requirement of Section 8 of Article X of the Oklahoma Constitution." 68 O.S. 2802(30).

15. This test was clearly derived from the definition of "agricultural production" and "production of agricultural products" (as defined by the Oklahoma Administrative Code, as applicable to sales and use taxation) "is limited to what would ordinarily be considered a farming or ranching operation undertaken for profit." Okla. Admin. Code 710:65–13–15(a)(1). "The term refers to the raising of food crops or livestock for sale." Included within the meaning of "agricultural production" and "production of agricultural products" are ranches, orchards, and dairies. *Id.* "Also included is any feedlot operation, whether or not the land upon which a feedlot operation is located is used to grow crops to feed the livestock in the feedlot and regardless of whether or not the livestock fed are owned by persons conducting the feedlot." *Id.*

16. If the answer to the primary basic test inquiry is no, the next consideration per the Policy is whether the property is part of a platted residential or commercial development. Additional factors (none being determinative alone or in combination with other factors) are as follows: a) Raising of livestock or cultivation of consumable products done for the purpose of one's own consumption or for the purpose of selling, trading, or giving these products to the producer's relatives, friends, neighbors, or associates; b)

**652**

Policy conflicts with Oklahoma law. Insomuch as we find the terms of the Policy derivative of and consistent with Oklahoma constitutional and statutory law, we reject Taxpayers' challenge thereto. The record does not support Taxpayers' assertion that the Policy permits Assessor to ignore or contradict state law in reaching its agricultural use classification determination. The Policy merely provides a guideline supplementary to and derivative of existing tax law in light of the absence of law defining the term "agricultural use" in the particular context of ad valorem taxation. In fact, the Policy not only cites pertinent Oklahoma law, the Policy expressly includes (in verbatim block quotation) the definitions of pertinent terms from the Oklahoma Administrative Code, 710:65–13–15, from which the Policy derives.

¶ 14 Under the express terms of the Assessor's Policy, because the tracts were never farmed or ranched for profit, the subject property does not qualify for agricultural use classification. Mr. Wright is a real estate investor who purchased and owned the property for investment purposes, not farming purposes.[17] Further, not only did Mr. Wright never make a profit from the baling of hay on the property, he never derived any benefit other than lawn or field maintenance from that operation. Additionally, although Assessor acknowledged there were no buildings on the tracts, he testified the recent construction of structural improvements such as a bridge and road across the property indicated a change in use from agricultural to commercial. That is certainly relevant evidence. Upon our consideration of the evidence in the record and the relevant factors, we find the law and competent evidence supports the trial court's determination that Taxpayers' use of the property as of 2011 was not agricultural within the meaning of Oklahoma law. We further uphold the trial court's determination that the property should be classified and valued as commercial property for the 2011 tax year.

¶ 15 On appeal, Taxpayers additionally appear to challenge the trial court's valuation determination. However, the substance of their appellate brief reveals a mere re-hashing of their primary argument that the property was erroneously classified as commercial (and should have been valued according to agricultural use classification instead). "In a non-jury trial the court's findings are entitled to the same weight and consideration that would be given to a jury's verdict." *Soldan v. Stone Video,* 1999 OK 66, ¶ 6, 988 P.2d 1268, 1269. "The trial court's findings will not be disturbed for insufficient evidence if there is any competent evidence-including reasonable inferences [derivative of] the same-to support them." *Id.* We do not "reweigh a trial court's finding of evidentiary fact, so long as supported by competent evidence in the record." *Magnolia Pipe Line Co. v. Cowen,* 1970 OK 223, ¶ 6, 477 P.2d 848, 850. Further, the credibility of witnesses and the effect and weight to be given to their testimony are questions of fact to be determined by the trier of fact, whether court or jury, and are not questions of law for the appellate court on appeal. *Hagen v. Independent School Dist. No. I–004,* 2007 OK 19, ¶ 8, 157 P.3d 738, 740.

¶ 16 Our review of the record reveals the existence of competent evidence to support the trial court's determinations on the issue of use classification and value for purposes of ad valorem taxation. We therefore affirm the July 6, 2012 Journal Entry of Judgment.

¶ 17 AFFIRMED.

GOREE, J., concurs; BELL, P.J., dissents.

---

having an Agricultural Sales Tax Exemption Permit; c) filing with the IRS a federal income tax return Schedule F claiming an income or loss from farming; d) completing and submitting a Tulsa County Assessor "Agricultural Land Use Affidavit"; e) residential covenants allowing homeowners to engage in farming type activity; f) municipal or county zoning of the property as agricultural.

**17.** "Farmers" are "persons engaged in agricultural production or production of agricultural products." Okla. Admin. Code 710:65–13–15(a)(2). "'Farming' or 'ranching' means the production, harvesting or processing of agricultural products." *Id.* at (a)(3).