161 P.3d 303 (2007)
2007 OK 25
In the Matter of the ASSESSMENTS FOR THE YEAR 2005 OF CERTAIN REAL PROPERTY OWNED BY ASKINS PROPERTIES, L.L.C.
Askins Properties, L.L.C., Petitioner/Appellant,
v.
Oklahoma County Assessor and the Board of Equalization of Oklahoma County, Defendants/Appellees.
No. 102,828.
Supreme Court of Oklahoma.
April 24, 2007.
Rehearing Denied June 26, 2007.
William K. Elias and Linda Jo Blan-Byford, Elias, Books, Brown & Nelson, P.C., Oklahoma City, Oklahoma for Petitioner/Appellant.
Gretchen Crawford, Assistant District Attorney, Oklahoma County District Attorney's Office, Oklahoma City, Oklahoma for Defendants/Appellees.
Sandra D. Rinehart, Senior Assistant Attorney General, Office of the Oklahoma Attorney General, Oklahoma City, Oklahoma for Oklahoma Attorney General W.A. Drew Edmondson.
LAVENDER, J.
¶ 1 We decide in this case whether the trial court erred in denying summary judgment to Petitioner/Appellant, Askins Properties, L.L.C. (AP) and granting summary judgment to Defendants/Appellees, the Oklahoma County Assessor and the Oklahoma County Board of Equalization (County or Assessor and Board, respectively). The case also requires us to decide if the trial court erred in ruling 68 O.S. 2802.1 (A)(4)(g) violative of the Oklahoma Constitution. We hold the trial court erred, we reverse the trial court judgment to the County and against AP, rule AP was entitled to summary judgment and remand to the trial court with direction to grant summary judgment to AP. We also hold § 2802.1(A)(4)(g)(last amended in 2002) is constitutional, at least to the extent it is applied to the summary judgment record presented in this case. As to other factual situations that might fall within the confines of § 2802.1(A)(4)(g), but which are not presented by the factual circumstances existent in this case under this record, questions concerning interpretation and constitutionality of that statutory provision will not be considered and determined because such other factual situations involve merely abstract matters not within the scope of the justiciable controversy presented.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
¶ 2 James Askins and Debra Askins (Askins) are co-trustees and sole beneficiaries of the James Askins and Debra Askins Revocable Trust (Trust). As pertinent here, the Trust held title to two pieces of real property in Oklahoma County. In December 2004 the Askins, as co-trustees of the Trust, signed a quit claim deed conveying title to the properties to AP, a limited liability company in which the Askins are sole owners of one hundred percent (100%) of the membership units.[1]
¶ 3 The Assessor increased the fair cash value of each property over the 2004 value more than five percent (5%) for 2005 ad valorem tax purposes. OKLA.CONST. art. 10, § 8B provides that "the fair cash value of any parcel of locally assessed real property shall not increase by more than five percent (5%) in any taxable year." However, an *307 exception found in § 8B to the five percent (5%) yearly cap/limit is that "[i]f title to the property is transferred, changed, or conveyed to another person, the property shall be assessed for that year based on the fair cash value as set forth in [OKLA.CONST. art. 10, § 8]." AP filed protests with the Board. The Board denied the protests and sustained the values set by the Assessor. As allowed by 68 O.S.2001, 2880.1 (A), AP appealed the Board's decision to the district court.
¶ 4 In the trial court both AP and the County sought summary judgment. The parties essentially agreed there was no substantial controversy as to any material fact and that the matter should be determined as a matter of law. Our review of the record shows there is no substantial controversy as to any material fact and the matter may be determined as a matter of law.
¶ 5 The parties also viewed the case as turning on whether or not a certain 2002 amendment to 68 O.S. 2802.1 (A)(4)(g) was constitutional. As relevant to this case § 2802.1(A)(4)(g) provides, in effect, that a deed transferring property to a limited liability company is not a transfer, conveyance or change of title to another person within the contemplation of the above § 8B exception when the transferors are the only owners of the limited liability company. AP took the position the amendment was constitutional. It also basically argued that because the same two people both before and after the transfer of the legal title held the equitable ownership of the property that the 5% yearly fair cash value cap or limit still applied. The County asserted the amendment was unconstitutional, relying primarily on an opinion of the Oklahoma Attorney General (Attorney General) in 2003 OK AG 39, where it was opined the 2002 amendment to § 2802.1(A)(4)(g) was unconstitutional and the Legislature exceeded its authority to pass legislation implementing the provisions of § 8B.
¶ 6 The trial court granted summary judgment to the County and against AP. AP appealed the trial court's judgment, an appeal we previously retained for disposition.[2] In a July 2006 Order the Attorney General was notified of the pendency of the appeal and afforded an opportunity to file a brief on the question of the constitutionality of § 2802.1(A)(4)(g). The Attorney General submitted a brief in August 2006 and consistent with 2003 OK AG 39 the brief argues the 2002 amended statute is unconstitutional as exceeding the bounds of that legislative authority necessary to implement the provisions of § 8B. The brief also in essence argues the amendment to § 2802.1(A)(4)(g) is not consistent with the intent of the § 8B exception.[3]
¶ 7 We hold the trial court erred, reverse the trial court judgment and remand to the trial court with direction to enter judgment for AP. We also hold § 2802.1(A)(4)(g) is constitutional, at least to the extent it is applied to the summary judgment record presented in this case.

STANDARD OF REVIEW
¶ 8 Summary judgment is reviewed de novo, i.e., an appellate court engages in a plenary, independent and non-deferential reexamination of the trial court's ruling. In re Estate of MacFarline, 2000 OK 87, ¶ 3, 14 P.3d 551, 554-555 (quoting Carmichael v. Beller, 1996 OK 48, 914 P.2d 1051, 1053 and citing Manley v. Brown, 1999 OK 79, ¶ 22 n. 30, 989 P.2d 448). Only when the evidentiary materials submitted as a whole demonstrate there are undisputed facts on material issues supporting but a single inference is *308 summary judgment in favor of a party appropriate. In the Matter of the Assessment of Real Property of Integris Realty Corp., 2002 OK 85, ¶ 5, 58 P.3d 200, 202-203.[4] The determination of legal questions involving statutory interpretation are also subject to de novo appellate review. Fulsom v. Fulsom, 2003 OK 96, ¶ 2, 81 P.3d 652, 654 (citing Samman v. Multiple Injury Trust Fund, 2001 OK 71, ¶ 8 and n. 5, 33 P.3d 302, 305 and n. 5). Basic review standards concerning constitutional interpretation will be set out as appropriate in the following part of this opinion.

ANALYSIS
¶ 9 Article 10, § 8B of the Oklahoma Constitution was adopted by the Oklahoma people at an election held in November 1996. Section 8B provides:
Despite any provision to the contrary, the fair cash value of any parcel of locally assessed real property shall not increase by more than five percent (5%) in any taxable year. The provisions of this section shall not apply in any year when title to the property is transferred, changed, or conveyed to another person or when improvements have been made to the property. If title to the property is transferred, changed, or conveyed to another person, the property shall be assessed for that year based on the fair cash value as set forth in Section 8 of Article X of this Constitution. If any improvements are made to the property, the increased value to the property as a result of the improvement shall be assessed for that year based on the fair cash value as set forth in Section 8 of Article X of this Constitution. The provisions of this section shall be effective January 1, 1997, and thereafter for counties which are in compliance with the applicable law or administrative regulations governing valuation of locally assessed real property as of such date. For counties which are not in compliance with such law or regulations as of January 1, 1997, the provisions of this section shall be effective January 1 of the year following the date the county is deemed to be in compliance with such laws or regulations as provided by law. The provisions of this section shall not apply to any personal property which may be taxed ad valorem or any property which may be valued or assessed by the State Board of Equalization. The Legislature shall enact any laws necessary to implement the provisions of this section.
(emphasis added).[5] Title 68 O.S. 2802.1 became law in 1997 (1997 Okla.Sess.Laws, Ch. 304, § 3) and was amended in 2002 (2002 Okla.Sess.Laws, Ch.476, § 3). The current version of the statute may be found at 68 O.S.Supp.2006, 2802.1. The provision was promulgated by the Legislature ostensibly in an effort to implement the provisions of § 8B. The 2002 amendment added language to § 2802.1(A)(4)(g), the subsection of the statute that is the main focus of this case. Section 2802.1, with the 2002 added language bolded, provides:
A. For purposes of implementing Section 8B of Article X of the Oklahoma Constitution:
1. "Any person" means any person or entity, whether real or artificial, other than the present owner;

*309 2. "Any year when title to the property is transferred, changed, or conveyed to another person or when improvements have been made to the property" means the year next preceding the January 1 assessment date;
3. "Improvement" means a valuable addition made to property amounting to more than normal repairs, replacement, maintenance or upkeep; and
4. "Transfers, change or conveyance of title" means all types of transfers, changes or conveyances of any interest, whether legal or equitable. However, "transfers, change or conveyance of title" shall not include the following:
a. deeds recorded prior to January 1, 1996,
b. deeds which secure a debt or other obligation,
c. deeds which, without additional consideration, confirm, correct, modify or supplement a deed previously recorded,
d. deeds between husband and wife, or parent and child, or any persons related within the second degree of consanguinity, without actual consideration therefor, or deeds between any person and an express revocable trust created by such person or such person's spouse,
e. deeds of release of property which is security for a debt or other obligation,
f. deeds of partition, unless, for consideration, some of the parties take shares greater in value than their undivided interests,
g. deeds made pursuant to mergers of partnerships, limited liability companies or corporations, or deeds pursuant to which property is transferred from a person to a partnership, limited liability company or corporation of which the transferor or the transferor's spouse, parent, child, or other person related within the second degree of consanguinity to the transferor, or trust for primary benefit of such persons, are the only owners of the partnership, limited liability company or corporation,
h. deeds made by a subsidiary corporation to its parent corporation for no consideration other than the cancellation or surrender of the subsidiary's stock, or
i. any deed executed pursuant to a foreclosure proceeding in which the grantee is the holder of a mortgage on the property being foreclosed, or any deed executed pursuant to a power of sale in which the grantee is the party exercising such power of sale or any deed executed in favor of the holder of a mortgage on the property in consideration for the release of the borrower from liability on the indebtedness secured by such mortgage except as to cash consideration paid.
B. This section shall be applied effective from the date of the passage of Section 8B of Article X of the Oklahoma Constitution.
C. The Oklahoma Tax Commission shall promulgate rules necessary to implement Section 8B of Article X of the Oklahoma Constitution and this section.
¶ 10 Initially, we must set forth what is and is not properly before us for decision in this case given the factual record existent. As it was stated in the Second Syllabus by the Court in In re Mayes-Rogers Counties Conservancy District Formation, 1963 OK 206, 386 P.2d 150, 151, "[a] question of law presented and argued on appeal that is not shown to arise under the facts and record will not be considered and determined." For us to opine on an issue not within the confines of the factual situation presented would involve determining merely an abstract question without any justiciable controversy being presently before the Court. See State ex rel. Cartwright v. Dunbar, 1980 OK 15, 618 P.2d 900, 904.
¶ 11 Thus, we do not opine about any transfer other than the one before us. In other words, one where two individuals as co-trustees and sole beneficiaries of a trust own real propertyand are thus at a minimum the equitable/beneficial owners of the propertytransfer the property to a limited liability company in which the same two individuals are the sole owners of one hundred *310 percent (100%) of the membership units of the limited liability company.[6] The instant case does not, however, provide a vehicle to discuss or decide issues concerning transfers from a person or persons to a partnership, corporation or limited liability company that have as the owner(s) the transferor's spouse, parent, child, or other person related within the second degree of consanguinity to the transferor. Such factual scenarios within the contemplation of § 2802.1(A)(4)(g) are not before us in this case, it would not be appropriate for us to decide issues concerning same here and our decision is limited to determining only the legal issue(s) presented by the record before us.[7] With this understood we turn to the matter at hand.
¶ 12 In Fent v. Oklahoma Capitol Improvement Authority, 1999 OK 64, 984 P.2d 200, the following was stated concerning the general review standard when the constitutionality of a statute is attacked:
In considering a statute's constitutionality, courts are guided by well established principles. A heavy burden is cast on those challenging a legislative enactment to show its unconstitutionality and every presumption is to be indulged in favor of the constitutionality of a statute. If two possible interpretations of a statute are possible, only one of which would render it unconstitutional, a court is bound to give the statute an interpretation that will render it constitutional, unless constitutional infirmity is shown beyond a reasonable *311 doubt. A court is bound to accept an interpretation that avoids constitutional doubt as to the legality of a legislative enactment.
It is also firmly recognized that it is not the place of this Court, or any court, to concern itself with a statute's propriety, desirability, wisdom, or its practicality as a working proposition. . . . . Such questions are plainly and definitely established by our fundamental law as functions of the legislative branch of government. Respect for the integrity of our tripartite scheme for distribution of governmental powers commands that the judiciary abstain from intrusion into legislative policymaking. A court's function, when the constitutionality of a statute is put at issue, is limited to a determination of the validity or invalidity of the legislative provision and a court's function extends no farther in our system of government.
Fent, 1999 OK 64, ¶¶ 3-4, 984 P.2d at 204 (citations omitted). The following is found in Draper v. State, 1980 OK 117, 621 P.2d 1142, also concerning interpretation of the Oklahoma Constitution:
The Constitution, the bulwark to which all statutes must yield, must be construed with reference to the fundamental principals which support it. Effect must be given to the intent of its framers and of the people adopting it. This intent is to be found in the instrument itself; and when the text of a constitutional provision is not ambiguous, the courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument.
Draper, 621 P.2d at 1145-1146 (footnote omitted). It was further stated in Draper on the subject of the interplay of legislative authority in promulgating statutes and constitutional validity:
[W]e do not look to the Constitution to determine whether the Legislature is authorized to do an act but rather to see whether it is prohibited. If there is any doubt as to the Legislature's power to act in any given situation, the doubt should be resolved in favor of the validity of the action taken by the Legislature. Restrictions and limitations upon legislative power are to be construed strictly, and are not to be extended to include matters not covered or implied by the language used.
Draper, 621 P.2d at 1146 (footnote omitted).
¶ 13 The express and plain purpose of § 8B is to put a five percent (5%) cap or limit on the increase in the fair cash value of real property in any year unless ownership of the property is transferred to another person or improvements are made to the property (the latter exception not being involved here). When only legal title is transferred but the equitable ownership is in the same two persons both before and after a deed is executed concerning the property we do not believe the intent of the constitutional provision had in mind the lifting of the five percent (5%) fair cash value cap. The Court on more than one occasion has considered tax related matters involving legal title and equitable title being in different persons or entities and we believe such case law points the way to a proper resolution in the instant case.
¶ 14 In Bowls v. Oklahoma City, 1909 OK 149, 104 P. 902, the holding is basically that the holder of the equitable title to land is regarded in law as the owner thereof and assessment of either a general tax or special assessment against the property in his name is valid. In the Syllabus by the Court in Bowls is found the following: "[a] vendee of realty, in possession under an executory contract of sale at the date of the assessment, is the real owner for the purpose of taxation, and that, too, whether prior to said sale the same was subject to taxation in the hands of his vendor or not." In State ex rel. Cartwright v. Dunbar, 1980 OK 15, 618 P.2d 900, it is essentially held that it is ownership of property, rather than only legal title, that is the determinative factor in deciding the applicability of the constitutional exemption from ad valorem taxes for property of the state, county or cities in relation to OKLA. CONST. art. 10, § 6. Finally, in Imaging Services, Inc. v. Oklahoma Tax Commission, Excise Tax Division, 1993 OK 164, 866 P.2d 1204, it was recognized that where legal title only is transferred but there is no transfer of the beneficial ownership, and no right to possession was transferred, there was no *312 transfer of ownership as contemplated by the aircraft excise tax statutes.
¶ 15 As far as the instant record is concerned, the same two people controlling the property before the execution of the quit claim deed control the property after that deed was signed. In our view, the Legislature had the authority to promulgate a statutegiven the lack of definition in § 8B as to what would constitute for purposes of the constitutional provision a transfer, conveyance or change of title to another person that would provide that where a transfer is only of the legal title, but the equitable/beneficial ownership remains in the same two persons that the five percent (5%) cap/limit increase on the fair cash value for ad valorem tax purposes would remain intact.[8] We also believe that a fair reading of § 8B itself indicates an intent not to lift the cap in the situation shown by the instant record. In other words, where equitable ownership of the property is solely in the hands of the same two persons both before and after the transfer and only the bare legal title is transferred the five percent (5%) cap still applies.[9]
¶ 16 It was stated in In re Initiative Petition No. 281, State Question No. 441, 1967 OK 230, 434 P.2d 941, 952 (citing Associated Industries of Oklahoma v. Oklahoma Tax Commission, 1936 OK 156, 55 P.2d 79):
Whether a provision of a Constitution be self-executing or not be self-executing, supplemental legislation facilitating the carrying into effect of the rights secured, and safeguarding the rights against abuses, may be desirable; but such legislation must be in harmony with the spirit of the Constitution and must not curtail the rights reserved or exceed the limitations specified.
The bottom line questions in this case are of course, does § 8B contemplate, and did the Legislature have authority to recognize such contemplation in § 2802.1(A)(4)(g), the exclusion from what would be considered a transfer of title to another person a conveyance where only the legal title is changed, but equitable ownership of the property is in the same two individuals both before and after the transfer? We believe the answer to both questions is plainly yes. Thus, to the extent § 2802.1(A)(4)(g) protected the real properties involved here and the Askins from an increase of more than five percent (5%) in the fair cash value for 2005 ad valorem tax purposes, the statute is constitutional as it merely shields those individuals intended to be protected by the central purpose of § 8B. When applied to the substance of the transfer involved here, i.e., legal title is conveyed but equitable title remains in the exact same two individuals, we believe no viable argument can be made that § 2802.1(A)(4)(g) exceeded legislative authority; instead, the provision implements the dictate(s) of § 8B and provides harmonizing legislation securing the *313 right protected therein. To that extent at a minimum § 2802.1(A)(4)(g) is a constitutionally authorized enactment wholly consistent with the purpose and intent of § 8B. The trial court erred in ruling otherwise and in granting summary judgment for the County and against AP.

CONCLUSION
¶ 17 The trial court erred in granting summary judgment to the County and erred in ruling § 2802.1(A)(4)(g) violative of the Oklahoma Constitution. Instead, the summary judgment record shows that AP was entitled to summary judgment. Further, we hold § 2802.1(A)(4)(g) is constitutional to the extent it is applied to the instant summary judgment record which shows that although legal title was transferred to AP, the equitable/beneficial title or ownership was in the same two individuals both before and after the transfer, the Askins.
¶ 18 Accordingly, the trial court judgment is REVERSED and this matter is REMANDED WITH DIRECTION TO THE TRIAL COURT TO GRANT JUDGMENT IN FAVOR OF PETITIONER/APPELLANT, ASKINS PROPERTIES, L.L.C.
¶ 19 WINCHESTER, C.J., EDMONDSON, V.C.J., LAVENDER, HARGRAVE, KAUGER, WATT, TAYLOR and COLBERT, JJ., concur.
¶ 20 OPALA, J., concurring in judgment.
OPALA, J., concurring in the court's judgment but not in its pronouncement.
¶ 1 I concur in today's conclusion that the fair market value of the two tracts in this litigation over their 2005 ad valorem tax assessment was improperly increased for the tax year 2005 in excess of 5% of its earlier assessed valuation.
¶ 2 For his excessive 2005 reassessment the county assessor relies mainly on the individual owners' (James and Debra Askins') December 2004 conveyance of the two tracts in question from themselves to Askins Properties, a limited liability company. As authority for the 2005 increase the assessor invokes the text of Art. 10 § 8B, Okla. Const., which makes the restriction upon annual increases of the assessed fair market value that stand limited to 5% inapplicable to "any year when title to the property is transferred, changed, or conveyed to another person" (emphasis supplied).
¶ 3 Decisive of this appeal is our answer to one simple question-that of whether the owners' 2004 conveyance of the two tracts to their limited liability company is to be recognized as a legally sufficient transfer "to another person" or merely as the grantors' (James and Debra Askins') retention of their land title in a somewhat altered form-i.e. as owners of the LLC rather than as owners in their own name. If the former is correct, the tracts were properly subject to an open-ended assessor's reassessment of the land's 2005 fair market value; if the latter is correct, the land's fair market value could not be increased in excess of 5% of its then assessed value. No other question need be answered here to dispose of this controversy.
¶ 4 The critical December 2004 conveyance by James and Debra Askins did not change one iota either the land's real ownership status or the incidence of their ad valorem tax liability. The legal consequences of the status change leave the incidence of ownership unaffected. Moreover, James and Debra Askins' legal capacity to once again revest in their own names the title to the affected property remains utterly unimpaired. The form is clearly different but the ownership's substance remains unaltered. Equity will elevate substance above form and disregard the difference.[1] Because the critical transfer from James and Debra Askins, as individual owners, to Askins Properties, LLC (they own that limited liability *314 company in toto)[2] cannot be considered in law to be either the land's divestiture[3] or its alienation,[4] the December 2004 conveyance may not be regarded as one made to "another person" within the meaning of the exception in Art. 10 § 8B, Okla. Const.
¶ 5 I would hence confine today's pronouncement to that single issue which must be resolved in favor of the taxpayers. Whether the applicable provisions of 68 O.S. Supp.2002 2802.1, subdiv. (A)(4)g do indeed constitute a correct legislative exposition of the text of Art. 10 § 8B, Okla. Const., need not be settled today. Fundamental-law jurisprudence of this Nation uniformly teaches that courts will not reach for decision, in advance of strict necessity, any tendered attack on a law's constitutional orthodoxy.[5] No necessity presses us here.
NOTES
[1] The Oklahoma Limited Liability Company Act (OLLCA) is found at 18 O.S.2001, 2000 et seq., as amended. The OLLCA was enacted in 1992 and it has been the subject of amendment since that time and since 2001. Under 18 O.S.Supp.2006, 2002 a limited liability company may be organized for the purpose of carrying on any lawful business, purpose or activity (for profit or not) with one exception, to wit: it may not conduct business as a domestic insurer. A limited liability company may acquire, own and hold real property. 18 O.S.2001, 2003 (5). The following was stated in a 1993 Oklahoma Law Review comment concerning limited liability companies:

Oklahoma has recently joined a number of other states by enacting legislation which authorizes the formation of a limited liability company (LLC) under state law. This relatively new statutory business form is increasingly catching the attention of many state legislatures. The most striking feature of this new breed of business organization is that it has characteristics of both a partnership and a corporation. When properly organized, the LLC offers the pass-through taxation benefits of a partnership for federal income tax purposes combined with corporate-like limited liability for its members.
Limited Liability Company: Oklahoma's Limited Liability Company Act: Concerns, Considerations, and Conclusions, 46 Okla. L.Rev. 349 (1993)(footnotes omitted).
[2] Title 68 O.S.2001, 2880.1 (C) allows a taxpayer to appeal a district court's decision in this type of case to this Court. Section 2880.1(C) is part of the Oklahoma Ad Valorem Tax Code, 68 O.S. 2001, 2801 et seq., as amended.
[3] In June 2006 John A. Henry Co., Ltd. filed an application to file an amicus curiae brief in support of Petitioner/Appellant, Askins Properties, L.L.C. (AP). In November 2006 Deerfield Estates, LLC filed an application to file an amicus curiae brief, also to support the position advanced by AP as we read the application. The Defendants/Appellees, the Oklahoma County Assessor and the Oklahoma County Board of Equalization (County or Assessor and Board, respectively) filed objections to each amicus curiae brief application. After reviewing the applications and the objections we determine the two applications should be and are denied.
[4] As 12 O.S.Supp.2006, Ch. 2, App., Rules for the District Courts of Oklahoma, Rule 13(e) sets out, summary judgment is warranted only when "there is no substantial controversy as to the material facts and . . . one of the parties is entitled to judgment as a matter of law[.]"
[5] OKLA.CONST. art. 10, § 8(A)(2) provides that:

A. Except as otherwise provided in Article X of this Constitution, beginning January 1, 1997, all property which may be taxed ad valorem shall be assessed for taxation as follows:
* * *
2. Real property shall not be assessed for ad valorem taxation at a value less than eleven percent (11%) nor greater than thirteen and one-half percent (13.5%) of its fair cash value for the highest and best use for which such property was actually used, or was previously classified for use, during the calendar year next preceding the first day of January on which the assessment is made. The transfer of property without a change in its use classification shall not require a reassessment based exclusively upon the sale value of such property. In connection with the foregoing, the Legislature shall be empowered to enact laws defining classifications of use for the purpose of applying standards to facilitate uniform assessment procedures in this state[.]
[6] We need not concern ourselves here with any issue as to the validity of the James Askins and Debra Askins Revocable Trust (Trust) based on an argument no valid Trust was created because of the doctrine of merger of legal and equitable interests in the real property being in the same two people, i.e., in that James Askins and Debra Askins (the Askins) are both co-trustees and sole beneficiaries of the Trust. An explanation of the doctrine of merger in regard to the creation of a valid trust in Oklahoma is contained in 2 Okla. Prob. Law & Prac. § 32.4 (3rd ed.1995). Whether the Askins were owners of both the legal and equitable interests in the real properties prior to the conveyance by quit claim deed to AP or merely the beneficial interest owners does not impact our disposition of the question before us in this case. Any documents creating the Trust are not contained in the record presented.
[7] We also do not opine concerning whether it would have been appropriate to lift the five percent (5%) yearly cap on the fair cash value had others in addition to the Askins held some economic rights in AP at the time of the December 2004 conveyance of the properties involved in this case. There is no indication in the summary judgment record that any other person or entity had any interest whatsoever in AP at the time of the transfer. Title 18 O.S.Supp.2006, 2033 (a part of the OLLCA, supra note 1) specifies that a membership interest in a limited liability company may not be transferred unless allowed in an operating agreement relating to the limited liability company. However, under § 2033 a member may assign, in whole or in part, the economic rights associated with a membership interest. The record before us does not contain any operating agreement associated with AP. We also note that we do not have before us in this case any issue concerning any potential future scenarios that might arise in relation to changes in the membership of AP or future assignments of any economic rights therein.

Finally, we note that in In re Assessments for the Year 2003 of Certain Properties Owned by Affordable Residential Communities 7, L.L.C. and Affordable Residential Communities 8, L.L.C. (ARC), 2006 OK CIV.APP 147, 150 P.3d 399, the Court of Civil Appeals, Division 2, held that 68 O.S. 2802.1 (A)(4)(g)(both before and after the 2002 legislative amendment) was constitutional. Basically, the transfers at issue in ARC were conveyances of real property from two limited liability companies to two other limited liability companies where all four of the limited liability companies were owned by a fifth limited liability company (a Delaware L.L.C.) that in turn was owned by a limited partnership whose general partner was a corporation. ARC, 2006 OK CIV APP 147, ¶¶ 2-3, 150 P.3d at 401-402. In the process of its ruling the Court of Civil Appeals at ¶¶ 26-30, 150 P.3d at 406-407, in addition to opining as to other subsections in § 2802.1(A)(4), appears to hold constitutional the provisions of § 2802.1(A)(4)(g) concerning transfers from a person or persons to a partnership, corporation or limited liability company that have as the owner(s) the transferor's spouse, parent, child, or other person related within the second degree of consanguinity to the transferor (the Court of Civil Appeals uses the phrase "close relative of the owner"), even though we find no indication in ARC that the transfers involved were to limited liability companies owned by any transferors' spouse, parent, child or other person related within the second degree of consanguinity to a transferor. In other words, ARC appears to contain obiter dicta. Certiorari to this Court was not requested in ARC and we note that opinions of the Court of Civil Appeals are not binding precedent unless approved for publication in the official reporter by a majority of the Justices of this Court. 20 O.S.2001, 30.5. ARC has not been so approved.
[8] When the terms or phrases of a constitutional provision are not adequately defined therein there is nothing inappropriate by virtue of the Legislature enacting laws defining those terms or phrases consistent with the purpose of the constitutional provision [see In re Initiative Petition No. 281, State Question No. 441, 1967 OK 230, 434 P.2d 941, 952] or as necessary to carry into effect the constitutional provision. See Miller v. Oklahoma Alcoholic Beverage Laws Enforcement Commission, 1990 OK CIV APP. 74, 797 P.2d 1013, 1015-1016.
[9] We realize that under 18 O.S.2001, 2032 (a part of the OLLCA, supra note 1) a membership interest in a limited liability company is to be considered personal property and a member thereof is considered not to have an interest in specific limited liability company property. Obviously, this statute, at least at first blush and facially, seems inconsistent with a holding that the Askins remain the equitable owners of the real properties after title was transferred to AP. However, as a practical matter, in that the Askins owned the entire membership interest in AP at the time of the transfer and there is nothing in the record to indicate that anyone else had any interest in AP or control therein at the time of transfer, it seems the reality of the situation, despite § 2032, is that at the time of transfer the Askins retained full control over the real properties and, in fact, remained the equitable owners. Accordingly, we discern no act in excess of legislative authority by the Legislature recognizing the reality of the situation via 68 O.S. 2802.1 (A)(4)(g) and concluding that for the purposes of lifting the yearly five percent (5%) cap/limit on the fair cash value for ad valorem tax purposes a transfer of title to a limited liability company in such a situation will not be considered a transfer, conveyance or change of title to another person within the meaning of OKLA.CONST. art. 10, § 8B.
[1] Equity always attempts to reach the substance and to ascertain, uphold and enforce rights and duties springing from the parties' real relations. Equity looks beyond the form in which a transaction was clad and shapes its relief to carry out the parties' true intention. Cobb v. Whitney 1926 OK 920, 255 P. 577; Exchange Bank of Perry v. Nichols, 1945 OK 292, 164 P.2d 867; Sinclair Oil & Gas Company v. Bishop, 1967 OK 167, 441 P.2d 436, 448.
[2] The total ownership of Askins Properties, LLC, by James and Debra Askins is undisputed.
[3] Divestiture is defined as "The loss or surrender of an asset or interest." BLACK'S LAW DICTIONARY, SEVENTH EDITION, 1999.
[4] Alienation is defined as "conveyance or transfer of property to another" and the reader is warned that "a transfer of real estate short of a conveyance of the title is not an alienation of the estate." Black's Law Dictionary, Seventh Edition, 1999.
[5] Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).