2015 OK 23

Don FRANKENBERG and Mary Frankenberg, Plaintiffs–Appellees,

v.

Beverly STRICKLAND, County Assessor, Defendant–Appellant,

Garvin County Board of Equalization, Defendant.

No. 111,865.

Supreme Court of Oklahoma.

April 21, 2015.

Don Frankenberg, Frankenberg Law Firm, Lindsay, OK, for Plaintiffs–Appellees Don Frankenberg and Mary Frankenberg.

Carol Price Dillinghham, Heather Darby, Assistant District Attorneys, District 21, Norman, OK, Attorneys for Defendant–Appellant Beverly Strickland, County Assessor.

GURICH, J.

### Facts & Procedural History

¶ 1 The facts of this case are undisputed.[1] Taxpayers Don Frankenberg and Mary Frankenberg's home was built in 1990. The Garvin County Assessor performed a visual inspection of the home in 1999 and assessed

---

1. *See* Appellant's Record on Accelerated Appeal, Ex. 6 at 1.

its fair cash value at $69,597.00. A fire damaged the home in 2000, and in 2001, the home was repaired and improvements were made. Included among the improvements was the addition of a bedroom and garage, replacement of exterior brick, and replacement of the original cedar. Neither party disputes that such additions were considered improvements for ad valorem tax purposes. Since the improvements were made to the home in 2001, no improvements have subsequently been made.

¶ 2 The parties do not dispute that the Assessor did *not* increase the fair cash value of the property between 1999 and 2012.[2] However, upon discovery of the improvements to the property during her visual inspection in 2011, the Assessor notified the Taxpayers of a new assessed fair cash value for tax year 2012 of $219,284.00. The Assessor mailed the notice of change of assessment to the Taxpayers on April 27, 2012. On May 1, 2012, the Taxpayers filed an informal protest with the Assessor. Shortly thereafter, the Assessor notified the Taxpayers that due to error, the value of the property should have been assessed at $149,877.00.[3]

¶ 3 On May 21, 2012, the Taxpayers filed a formal appeal with the Garvin County Board of Equalization, arguing that under Art. X, § 8B of the Oklahoma Constitution, the fair cash value of the property could not be increased more than 5% in tax year 2012. The Board upheld the revised assessment in the amount of $149,877.00. The Taxpayers appealed to the Garvin County District Court. The parties agreed that had the improvements actually been made to the home in the year of the assessment, the 5% cap found in Art. X, § 8B would not apply and the Assessor would have been free to increase the fair cash value of the property with regard to the improvements without limitation for tax year 2012. However, the improvements were not made in the same year the assessment was made; they were made in 2001—more than ten years before.

¶ 4 Taxpayers filed a Motion for Summary Judgment, and the Assessor responded and filed a Cross Motion for Summary Judgment. The trial court granted summary judgment in favor of the Taxpayers and agreed that Art. X, § 8B prohibited the Assessor from increasing the fair cash value of the property more than 5% for tax year 2012. The court stated:

> [T]he meaning and effect of this Section is that if the County Assessor identifies real property which has been improved in years prior to the current year of assessment and has not increased the fair market value of the property in prior years, the County Assessor is estopped from increasing the fair market value more than five percent (5%) in the current year of assessment, notwithstanding that the fair cash value of improvements first identified in the current tax year would support a significantly higher increase in fair cash value than five percent (5%) for the current tax year based upon the higher value of improvements previously made but only recently identified.[4]

The trial court did find, however, that the Assessor could increase the assessed value by 5% each year subsequent to when the improvements were first identified until the full improved value was fully assessed.[5] The trial court ordered the Assessor to revise the assessed value of Taxpayers' property to $73,076.85, an increase of 5% over the 1999 assessment. The trial court stayed its order pending appeal. The Assessor appealed and filed a Motion to Retain with this Court, which we granted.

2. The Assessor's brief states that the property was assessed annually at the same value from tax year 1999 until tax year 2012. The Affidavit of Beverly Strickland, Garvin County Assessor, states that she "operates within budgetary constraints that allow staff to do new valuations county wide on an annual basis, but ... to do repeat visual inspections only every four years." Appellant's Record on Accelerated Appeal, Ex. 4, at Ex. A. The Assessor gives no explanation, however, as to why this particular property was not visually inspected every four years.

3. The Assessor does not explain what the error was in the original valuation of $219,284.00.

4. Appellant's Record on Accelerated Appeal, Ex. 6 at 2.

5. *Id.*

## Standard of Review

¶ 5 An order sustaining summary judgment in favor of a litigant presents solely a legal matter. *Sheffer v. Carolina Forge Co.*, 2013 OK 48, ¶ 10, 306 P.3d 544, 547–48. Questions of law mandate a de novo standard of review, which affords this Court with plenary, independent, and non-deferential authority to examine the issues presented. *Id.*

## Analysis

¶ 6 Article X, § 8B of the Oklahoma Constitution provides:

Despite any provision to the contrary, on and after January 1, 2013, **the fair cash value of any parcel of locally assessed real property shall not increase by more than five percent (5%) in any taxable year;** provided, if such property qualified for a homestead exemption or is classified as agricultural land, any increase to the fair cash value of such locally assessed real property in a taxable year shall be limited to three percent (3%). **The provisions of this section shall not apply in any year when title to the property is transferred, changed, or conveyed to another person or when improvements have been made to the property.** If title to the property is transferred, changed, or conveyed to another person, the property shall be assessed for that year based on the fair cash value as set forth in Section 8 of Article X of this Constitution. **If any improvements are made to the property, the increased value to the property as a result of the improvement shall be assessed for that year based on the fair cash value as set forth in Section 8 of Article X of this Constitution.** The provisions of this section shall not apply to any personal property which may be taxed ad valorem or any property which may be valued or assessed by the State Board of Equalization.

The Legislature shall enact any laws necessary to implement the provisions of this section.

Okla. Const. Art. X, § 8B (emphasis added).[6]

¶ 7 In *In re Assessments for the Year 2005 of Certain Real Property Owned by Askins Properties, L.L.C.*, 2007 OK 25, 161 P.3d 303, this Court interpreted Art. X, § 8B's exception to the 5% cap in a situation involving a transfer of title. In that case, a trust held title to two pieces of property. The co-trustees executed a quit claim deed conveying the properties to an L.L.C. in which they were the sole owners. The Oklahoma County Assessor increased the fair cash value of each property more than 5% for ad valorem tax purposes. The taxpayers challenged the ruling and on appeal this Court agreed with the taxpayers and found that although legal title was transferred, the equitable title or

6. This particular constitutional provision has been in effect since 1997 and was amended in 2012. The 1997 version provided:

§ 8B. Limit on percentage of fair cash value of real property.

Despite any provision to the contrary, the fair cash value of any parcel of locally assessed real property shall not increase by more than five percent (5%) in any taxable year. The provisions of this section shall not apply in any year when title to the property is transferred, changed, or conveyed to another person, or when improvements have been made to the property. If title to the property is transferred, changed, or conveyed to another person, the property shall be assessed for that year based on the fair cash value as set forth in Section 8 of Article X of this Constitution. If any improvements are made to the property, the increased value to the property as a result of the improvement shall be assessed for that year based on the fair cash value as set forth in Section 8 of Article X of this Constitution. The provisions of this section shall be effective January 1, 1997, and thereafter for counties which are in compliance with the applicable law or administrative regulations governing valuation of locally assessed real property as of such date. For counties which are not in compliance with such law or regulations as of January 1, 1997, the provisions of this section shall be effective January 1 of the year following the date the county is deemed to be in compliance with such laws or regulations as provided by law. The provisions of this section shall not apply to any personal property which may be taxed ad valorem or any property which may be valued or assessed by the State Board of Equalization.

The Legislature shall enact any laws necessary to implement the provisions of this section. The 2012 amendment dealt with property that qualified for a homestead exemption or that was classified as agricultural land. The parties agreed at the hearing before the trial court that the amendment in 2012 does not apply to this case. Appellant's Record on Accelerated Appeal, Ex. 7 at 22.

ownership was in the same two individuals before and after the transfer. As such, the transfer did not constitute a transfer of property under Art. X, § 8B, so the property remained subject to the 5% cap.

¶ 8 In deciding the case, this Court first stated that the "**express and plain purpose of § 8B is to put a five percent (5%) cap or limit on the increase in the fair cash value of real property in *any* year unless ownership of the property is transferred to another person or improvements are made to the property.**" *Id.* ¶ 13, 161 P.3d at 311 (emphasis added). The Court then found that given the lack of definition in § 8B of "a transfer, conveyance or change of title to another person," the Legislature had the authority to promulgate additional legislation to implement the provisions of Art. X, § 8B. *Id.* ¶ 15, 161 P.3d at 312.

¶ 9 In *Askins Properties,* the implementing legislation excluded transfers of "deeds pursuant to which property is transferred from a person to a partnership, limited liability company or corporation of which the transferor or the transferor's spouse, parent, child, or other person related within the second degree of consanguinity to the transferor, or trust for primary benefit of such persons, are the only owners of the partnership, limited liability company or corporation." *Id.* ¶ 9, 161 P.3d at 309. This Court held that the legislative exception did not exceed legislative authority but instead the provision "implement[ed] the dictate(s) of § 8B and provide[d] harmonizing legislation securing the right protected therein." *Id.* ¶ 16, 161 P.3d at 312–13. This Court said:

> "The Constitution is the bulwark to which all statutes must yield. In construing and applying constitutional provisions, the intent of the framers and the people adopting it must be given effect. **Absent an ambiguity, the intent is settled by the language of the provision itself, and the courts are not at liberty to search beyond the instrument for meaning.**"

*Id.* ¶ 12, 161 P.3d at 311 (quoting *Draper v. State,* 1980 OK 117, 621 P.2d 1142).

¶ 10 In the case before us, the Assessor argues that Art. X, § 8B is ambiguous and urges this Court to look to subsequently enacted implementing legislation to interpret the meaning of the provision. The Assessor argues that examination of Art. X, § 8B, along with the statutory ad valorem scheme, reveals that the intent of Art. X, § 8B was to cap ad valorem increases on real property at 5% unless the taxpayer improves the property. The Assessor argues that upon *discovery* of the improvements by the Assessor, the Assessor may not increase ad valorem tax on the original structure more than 5%, but can tax the improvement at its full fair cash value, which could result in a greater than 5% increase in the fair market value of the property in a given tax year.

¶ 11 Taxpayers argue that Art. X, § 8B is clear and unambiguous and that the Assessor may only exceed the 5% cap in the year improvements were made to the property. Taxpayers argue the exception to the 5% cap does not apply in the year when the Assessor first discovered the improvements. Taxpayers argue that because the improvements were made to this property in 2001, the fair cash value cannot be increased more than 5% in tax year 2012. Taxpayers assert the Assessor's remedy in this case is to increase the assessed value by 5% in each future year until the actual cash value is reached.

¶ 12 Pursuant to *Askins Properties,* we first look to the language of Art. X, § 8B to determine the intent. Section 8B provides in relevant part that the valuation limitation "**shall not apply in any year ... when improvements have been *made* to the property**," and that "**[i]f any improvements are *made* to the property, the increased value to the property as a result of the improvement shall be assessed for *that year* based on the fair cash value as set forth in Section 8 of Article X of this Constitution.**" Okla. Const. Art. X, § 8B (emphasis added). The provision unambiguously refers to the year when improvements have been *made.* Nowhere in § 8B is there any reference to the year when improvements are first discovered. Additionally, the use of "that year" clearly refers to the year that improvements were made to the property. We find the exception to the 5% cap for improvements exists only for the year the improvements were made to the property and does not apply in the year when the Assessor first

discovers the improvements. Unlike in *Askins*, we find the intent of § 8B is settled by the language of the provision itself, and we see no need to look to subsequently enacted implementing legislation to interpret the meaning of the provision.

¶ 13 Because we affirm the trial court, we decline to address whether the Assessor was equitably estopped from increasing the fair market value of the property after waiting more than ten years to increase the assessment. Additionally, the Assessor expressly stated that the Taxpayers in this case had no duty to report the improvements and were not at fault in any way for the length of time that passed between the improvements and the visual inspection.[7] As such, we decline to address whether a taxpayer has a duty to report improvements to the Assessor's office or whether the burden rests solely with the Assessor to discover improvements.[8]

### Conclusion

¶ 14 The exception to the 5% cap for improvements to a property exists only for the year the improvements were made to the property and does not apply in the year when the Assessor first discovers the improvements. The Assessor's remedy in this case, as the trial court concluded, is to increase the assessed value by 5% in each future year until the actual cash value is reached.

**AFFIRMED**

¶ 15 ALL JUSTICES CONCUR.

---

7. Appellant's Record on Accelerated Appeal, Ex. 7 at 21.

8. The Assessor also argues that the trial court's interpretation of Art. X, § 8B, which we affirm today, violates the constitutional mandate in Art. X, § 5(B) that all taxes be uniform upon the same class of subjects because such ruling creates two classes of ad valorem taxpayers: those whose improvements are completed during the tax year in which they are discovered and those whose improvements were completed in a tax year before their discovery upon visual inspection. Appellant's Brief in Chief at 9. Assessor argues that this ruling allows some people to avoid taxation of their improvements at full fair cash value for years at a time, while those that complete their improvements in the year of the Assessor's visual inspection pay taxes upon the full fair cash value of the improvement along with an increase of up to 5% on the original property for a total increase potentially above 5%. *Id.* If two classes of ad valorem taxpayers are in fact created, it is not due to this Court's interpretation of Art. X, § 8B. Rather, it is a result of the requirement of 68 O.S. § 2820 that taxable real property be visually inspected only every four years. Neither party challenged the constitutionality of the statutory visual inspection requirement under Art. X, § 5(B), and we will not address it today.